Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
1144 W. Lake Street, Suite 400
Oak Park, IL  60301
Telephone:  (708) 628-4960

*Co-Lead Counsel for Plaintiffs*

Michael A. London
Douglas & London, P.C.
111 John Street, 14th Floor
New York, NY  10038
Telephone:  (212) 566-7500

*Co-Lead and Liaison Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:  BAYER CORP. COMBINATION ASPIRIN PRODUCTS MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS PLEADING RELATES TO:<br><br>ALL CASES | 09-md-2023 (BMC)(JMA)<br><br><br>**COGAN**, District Judge |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS**
**SETTLEMENT, FOR CERTIFICATION OF SETTLEMENT CLASSES, AND**
**FOR PERMISSION TO DISSEMINATE CLASS NOTICE**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

PROCEDURAL HISTORY ..................................................................................................... 1

MATERIAL TERMS OF SETTLEMENT ............................................................................. 3

    A.    Class Benefits ................................................................................................... 3

    B.    The Proposed Class Notice Plan is Reasonable.............................................. 4

    C.    Attorneys' Fees and Service Awards............................................................... 6

ARGUMENT ........................................................................................................................... 6

I.       PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE. ................... 6

    A.    Overview of the Class Settlement Approval Process ........................................ 6

    B.    The Settlement Negotiated By The Parties Is Entitled To An Initial Presumption Of Fairness. .............................................................................................................. 8

    C.    A Review of the Applicable Factors Favors Preliminary Approval of the Settlement. .............................................................................................................. 8

        1.    The Settlement Provides Reasonable Monetary Relief And Substantially Fulfills The Purposes and Objectives Of The Class Action. ................................ 10

        2.    The Settlement Agreement Does Not Include Any "Obvious Deficiencies" That Would Render Class Notice and A Final Approval Hearing Futile. ............ 12

II.      THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES. .............................................................................................................. 14

    A.    The Proposed Class Meets The Requirements Under *Amchem* For Certification of A Settlement Class. ....................................................................................................... 14

    B.    The Numerosity, Commonality, Typicality, And Adequacy Requirements Are Met. ......... 15

        1.    Numerosity ................................................................................................... 15

        2.    Commonality and Typicality ........................................................................ 15

        3.    Adequacy ...................................................................................................... 16

C.    Common Questions Predominate, And A Class Action Is The Superior Method To Adjudicate Class Members' Claims. .................................................................................. 17

III.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE. ............................................................................................................ 18

A.    The Proposed Class Notice Provides for the Best Notice Practicable Under the Circumstances. ......................................................................................................... 18

B.    The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation. ........................................................................................... 19

PROPOSED SCHEDULE OF EVENTS ............................................................................. 20

CONCLUSION ..................................................................................................................... 222

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alleyne v. Time Moving & Storage, Inc.,*
    264 F.R.D. 41 (E.D.N.Y. 2010) ...................................................................................................15

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ..............................................................................................................14, 17, 18

*Ayzelman v. Statewide Credit Servs. Corp.,*
    238 F.R.D. 358 (E.D.N.Y. 2006) ..............................................................................................14

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.,*
    609 F. Supp. 2d 1379 (J.P.M.L. 2009) .......................................................................................1

    701 F. Supp. 2d 356 (E.D.N.Y. 2010) .......................................................................................2

*Borlas v. Davis Law Assocs.,*
    237 F.R.D. 345 (E.D.N.Y. 2006) ........................................................................................12, 13

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) ....................................................................................................15

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ...................................................................................................11

*Garst v. Franklin Life Ins. Co.,*
    1999 U.S. Dist. LEXIS 22666, at *1 (N.D. Ala. June 25, 1999) ...........................................13

*Gautreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982) ...................................................................................................9

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ...............................................................................................................13

*Khait v. Whirlpool Corp.,*
    2009 U.S. Dist. LEXIS 114817, at *1 (E.D.N.Y. Oct. 1, 2009) ...........................................12

*In re Luxottica Group S.p.A. Sec. Litig.*
    233 F.R.D. 306 (E.D.N.Y. 2006) .............................................................................................7

*McReynolds v. Richards-Cantave,*
    588 F.3d 790 (2d Cir. 2009) .................................................................................................6, 8

*Myers v. Hertz Corp.,*
    2007 U.S. Dist. LEXIS 53572, at *1 (E.D.N.Y. July 24, 2007) ...........................................16

*In re Playmobil Antitrust Litig.,*
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) ..................................................................15

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993)..............................................................................16

*Velez v. Novartis Pharms. Corp.,*
   2010 U.S. Dist. LEXIS 125945, at *1 (S.D.N.Y. Nov. 30, 2010) .........................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005)...........................................................................7, 18

*Willix v. Healthfirst, Inc.,*
   2010 U.S. Dist. LEXIS 139137, at *1 (E.D.N.Y. Nov. 12, 2010)...........................9

   2011 U.S. Dist. LEXIS 21102, at *1 (E.D.N.Y. Feb. 18, 2011)..............................8

## RULES

Federal Rule of Civil Procedure 23 ......................................................... *passim*

## OTHER AUTHORITIES

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ...................7, 8, 9, 12

*Manual for Complex Litigation*  (4th ed. 2004)..................................................7, 8, 14

## INTRODUCTION

Plaintiffs respectfully submit this memorandum in support of their motion for preliminary approval of a Settlement[1] reached with Bayer HealthCare LLC ("Bayer" or "Defendant"). Under the terms of the Settlement, Bayer has agreed to pay $15 million to settle these lawsuits brought on behalf of consumers of Bayer Aspirin with Heart Advantage ("Bayer Heart Advantage") and/or Bayer Women's Low Dose Aspirin + Calcium ("Bayer Women's"). The Settlement will resolve Plaintiffs' claims.

Plaintiffs and Class Counsel believe the Settlement is fair, adequate and reasonable for the Settlement Classes—it offers individual class members a recovery that approximates the difference between the amount they paid for Bayer Heart Advantage or Bayer Women's and the cost of a plain Bayer 81 mg aspirin. Plaintiffs thus respectfully request that this Court preliminarily approve the Settlement, certify the Settlement Classes, and authorize notice to be sent to class members.

## PROCEDURAL HISTORY

In late 2008 and 2009, numerous consumers filed class action suits against Bayer nationwide for violations of state consumer protection statutes, breaches of express and implied warranties, and unjust enrichment in connection with the sale and marketing of Bayer Heart Advantage and Bayer Women's. The Judicial Panel on Multi-District Litigation centralized these cases before this Court on April 14, 2009. *See generally In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379 (J.P.M.L. 2009). On June 8, 2009, this Court appointed Michael London of Douglas & London, P.C. and Elizabeth Fegan of

---

[1] All capitalized terms have the same meaning as defined in the Settlement Agreement, attached as Ex. 1.

Hagens Berman Sobol Shapiro LLP as Class Counsel to represent both the putative Bayer classes. (Doc. # 17.)

Plaintiffs filed their master complaint against Bayer on July 13, 2009 (Doc. # 29) and on September 15, 2009, Bayer promptly moved for a dismissal, arguing that as a matter of law the complaint should be dismissed. (Doc. # 44.) The motion was denied in its entirety. *See generally In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.,* 701 F. Supp. 2d 356 (E.D.N.Y. 2010).

During discovery, Class Counsel conducted nearly-complete merits discovery of Bayer as well as third parties. Settlement, pp. 5-6. Discovery included the review of the 2.5 million pages of documents produced by the Defendant and third parties, over fifteen (15) depositions of fact witnesses, depositions of each of the four Plaintiffs, nine (9) depositions of former named plaintiffs to the MDL Action, and the exchange of reports by and depositions of Plaintiffs' three (3) expert witnesses and four (4) of Bayer's five (5) expert witnesses. *Id*. at p.6. The parties also fully briefed Plaintiffs' Motion For Class Certification as well as Plaintiffs' Motions to Strike Defendants' Experts. *Id.*

With both sides primed for an evidentiary battle, and well aware of the strengths and weaknesses of their respective positions, the parties met individually and before two different independent mediators over an eight-month period to negotiate a possible resolution that would avoid the risk and expense of continued litigation. *Id.* Declaration of Elizabeth A. Fegan in Support of Motion for Preliminary Approval*.,* ¶ 3 ("Fegan Decl."), attached as Ex. 2. The result is the Settlement Agreement now before the Court.

## MATERIAL TERMS OF SETTLEMENT

### A.     Class Benefits

Under the Settlement, Bayer will provide monetary benefits to two Settlement Classes

defined as follows:

> **"Bayer Aspirin With Heart Advantage" Class (Class 1)**
> All persons who from January 1, 2008 to the [date of preliminary
> approval] purchased Bayer Aspirin with Heart Advantage in the
> United States for personal, family or household uses.  Excluded
> from the settlement class are any Judges to whom this Action is
> assigned and any member of their immediate families.
>
> **"Bayer Women's Low Dose Aspirin + Calcium" Class (Class 2)**
> All persons who from January 1, 2008 to the [date of preliminary
> approval], purchased Bayer Women's Low Dose Aspirin +
> Calcium in the United States for personal, family or household
> uses.  Excluded from the settlement class are any Judges to whom
> this Action is assigned and any member of their immediate
> families.

*See* Settlement, § I(A)-(B).  Class members who have valid proofs of purchase and who file

valid, sworn and timely claims are entitled to a cash settlement payment of $6.00 for each bottle

of Bayer Heart Advantage purchased during the Class Period, and $4.00 for each bottle of Bayer

Women's purchased during the class period.  *See id.*, § III(E)(2)(a).  And class members who do

not have valid proofs of purchase but who file valid, sworn, and timely claims are entitled to a

one-time cash settlement payment of $6.00 for Bayer Heart Advantage and $4.00 for Bayer

Women's.  *See id.*, § III(E)(2)(b).

In total, Bayer will be required to pay $15 million into the Settlement Fund.  *See id.*, §

III(C).  The Bayer Heart Advantage Settlement Class will receive a 40% allocation from the Net

Settlement Fund and the Bayer Women's Settlement Class will receive a 60% allocation from

the Net Settlement Fund.  *See id.*, § III(E)(1).[2]  The Settlement Fund will be distributed to pay eligible claims, subject to any pro rata reductions if the total dollar of the claims exceed the money available for distribution.  *See id.*, § III(E)(2)(a)-(b).  Other costs to be paid from the Settlement Fund include any taxes on the fund; notice and settlement administration costs; service awards; and Plaintiffs' attorneys' fees and costs.  *See id.*, § III(F).  If there are Excess Amounts remaining after all payments ordered by the Court have been made, the parties will request the Court's approval to distribute the Final Excess Amount as *cy pres* to charities agreed to by the parties and to be identified in the final approval papers.  *See id.*, § III(E)(3)(b).

### B.      The Proposed Class Notice Plan is Reasonable

Upon preliminary approval of the Settlement, Bayer is responsible for advancing funds adequate to pay to notify class members of the Settlement benefits and related administrative expenses.  *See* Settlement, § III(D)(1).  The parties have selected a qualified third-party settlement administrator, Gilardi & Co. LLC, to update class members' addresses, mail notice of the settlement to class members,[3] receive exclusion requests, process class members' claims, respond to class member inquiries, issue settlement checks to claimants, and conduct other activities relating to class notice and settlement administration under the parties' supervision.  *See* Settlement, §§ II(H), IV(A).  *See also* Gilardi & Co. LLC Statement of Qualifications (May 9, 2012), attached as Ex. 3.

---

[2] Moreover, these percentages were the result of arm's length negotiations conducted by Allocation Counsel, Daniel Mogin of The Mogin Law Firm P.C. and Melanie Muhlstock of Parker Waichman LLP, who were appointed by Lead Counsel for the Settlement Classes.  *See* Settlement, §§ II(B), III(E)(1).

[3] In addition to the mail notice of the settlement to class members to be sent by the Settlement Administrator, Costco will be also sending mail notice of the settlement to class members to individuals in its records that purchased a Combination Aspirin.

Plaintiffs have also retained a renowned expert on Class Notice, Daniel Burke of Larkspur Design Group, to develop a notice plan that meets the requirements of due process. Declaration of Daniel Burke ("Burke Decl."), ¶ 1, 8, 11, 41-43, attached as Ex. 4. As set forth in the Burke Declaration, Larkspur Design Group composed a notice program designed to reach approximately 8-10% of the class through direct mail and at least 65% percent of the target audience an average of 2.9 times. Burke Decl., ¶ 22, 24. The notice program includes:

- Direct notice through U.S. First-Class Postage mail to any class members who can be identified through reasonable efforts, *see* Ex. B to the Settlement Agreement;

- Publishing a summary notice nationwide in nationally circulated magazines and newspapers read by the target audience, i.e., Reader's Digest, Good Housekeeping, Woman's Day, People, Time, Cooking Light, National Enquirer, Smithsonian, USA Today, The Wall Street Journal and AARP Bulletin, *see* Ex. B to the Settlement Agreement;

- Sponsored Links advertising on major search engines;

- Targeted Content Advertising through PulsePoint Ad Network, including focus on sites related to health;

- Banner display advertising through Facebook;

- A dedicated social network page on Facebook;

- A case dedicated informational website (located at www.bayercombinationaspirinsettlement.com), on which the notices and other important Court documents will be posted; and

- Targeted press releases through PR Newswire.

Burke Decl., ¶ 12.

The Long-Form Notice describes the material terms of the Settlement and the procedures for each class member to receive the benefits under the Settlement. The notice also describes the procedures for class members to exclude themselves from the settlement and to provide comments in support of or in objection to the settlement. *See* Settlement, Ex. D. Any class member who wishes to be excluded from the settlement can opt-out by making a timely request.

The procedures for opting-out are those commonly used in class action settlements and are straightforward and clearly described in the class notice. *See id.*

If the Court grants final approval of the Settlement after class members are notified and the time period for opt-out requests and objections expires, all class members who do not request exclusion from the class will be deemed to have released all claims as set forth in the Settlement Agreement against Bayer related to their purchase(s) of Bayer Heart Advantage or Bayer Women's that could have been asserted in this litigation. *See id.*, § IV.[4]

### C.    Attorneys' Fees and Service Awards

Under the Settlement, Bayer has agreed not to oppose Plaintiffs' request for reimbursement of Class Counsel's attorneys' fees not to exceed 30% of the settlement fund and expenses not to exceed $600,000, payable from the Settlement Fund. *See* Settlement, § IV(B). These amounts will be subject to Court approval pursuant to Rule 23(h) and will serve to compensate Class Counsel for the time, risk and expense they incurred pursuing class members' claims on their behalf. Bayer has also agreed to pay a service award of $2,500 to each of the four Plaintiffs serving as Class Representatives in this matter. *See id*.

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

### A.    Overview of the Class Settlement Approval Process

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("We have

---

[4] The Released Claims do **not** include claims for personal injury. *See* Settlement, § VI(A).

recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'  Such a presumption is consistent with the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (alterations in original, internal citations omitted).  Indeed, "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 117 (2d Cir. 2005) (internal quotation omitted).  As Judge Weinstein explained aptly in *In re Luxottica Group S.p.A. Sec. Litig*., 233 F.R.D. 306 (E.D.N.Y. 2006), "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is particularly true in class actions." *Id.* at 310 (internal quotation omitted).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must obtain the court's approval.  *See* Fed. R. Civ. P. 23(e).  Approval of a class action settlement involves a two-step process.  First, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation.  *See Manual for Complex Litigation* § 21.632 (4th ed. 2004) (hereafter "*Manual*"); *see also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25, at 38-39 (4th ed. 2002) (hereafter "*Newberg on Class Actions*") (endorsing two-step process).  If the preliminary evaluation of the Settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the Court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may

be presented in support of and in opposition to the Settlement.  *See Manual* § 21.633.  The notice

should tell class members how to make their views on the settlement known to the Court.  *See id.*

Plaintiffs now respectfully request that this Court take the first step in the settlement

approval process and grant preliminary approval of the settlement.

**B.      The Settlement Negotiated By The Parties Is Entitled To An Initial
          Presumption Of Fairness.**

In assessing whether preliminary approval should be granted, the Settlement is entitled to

a presumption of fairness.  Courts usually adopt "an initial presumption of fairness when a

proposed class settlement, which was negotiated at arm's length by counsel for the class, is

presented for court approval."  *Newberg on Class Actions*, § 11.41; *see also McReynolds*, 588

F.3d at 803 ("We [the Court] have recognized a presumption of fairness, reasonableness, and

adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations

between experienced, capable counsel after meaningful discovery.'").  And, this Court should

give "weight to the parties' judgment that the settlement is fair and reasonable." *Willix v.*

*Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *6 (E.D.N.Y. Feb. 18, 2011)  (citing *Khait v.*

*Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, (E.D.N.Y. Jan. 20, 2010);

*Westerfield v. Washington Mut. Bank*, No. 06 Civ. 2817(CBA), No. 08 Civ. 287(CBA)(JMA),

2009 U.S. Dist. LEXIS 94544, (E.D.N.Y. Oct. 2, 2009)).  "Absent fraud or collusion, [courts]

should be hesitant to substitute [their] judgment for that of the parties who negotiated the

settlement." *Willix,* 2011 U.S. Dist. LEXIS 21102, at *6 (internal citation and quotation omitted).

**C.      A Review of the Applicable Factors Favors Preliminary Approval of the
          Settlement.**

At the preliminary-approval stage, the Court should "make a preliminary determination

on the fairness, reasonableness, and adequacy of the settlement terms . . . ."  *Manual* § 21.632.

"Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process.  It simply allows notice to issue to the class and for class members to object to or opt out of the settlement."  *Willix*, 2010 U.S. Dist. LEXIS 139137, at *6; *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (the purpose of preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.").

"Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties."  *Willix,* 2010 U.S. Dist. LEXIS 139137, at *6.  "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *Id*. at *7 (quoting *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)) (internal quotation omitted). Thus, "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement."  *Newberg on Class Actions*, § 11.25; *see also Willix,* 2010 U.S. Dist. LEXIS 13913, at *7, ("The Court concludes that the proposed Settlement Agreement…is within the range of possible final settlement approval. Therefore, notice to the Class is appropriate.").

Applying the same considerations here shows that the Settlement exceeds the preliminary threshold for reasonableness and should proceed to a final approval hearing, at which time class members will have an opportunity to make their views known.

> **1.    The Settlement Provides Reasonable Monetary Relief And Substantially Fulfills The Purposes and Objectives Of The Class Action.**

Here, the settlement provides reasonable monetary relief and substantially fulfills the purposes and objectives of this class action.  Here, Plaintiffs have obtained a $15 million recovery, with $9 million allocated for the Bayer Women's Class and $6 million allocated for the Bayer Heart Advantage Class.  As described in the chart below, and using standard formulas and data from Bayer and publicly available sources and the damages models created by Plaintiffs' expert Dr. Jeffrey Harris, the settlement recovers significant percentages of the claimed damages. Specifically, the recovery represents significant percentages of recovery: (1) between 9.63% and 87.14% of the damages alleged for Bayer Women's Class Members, and (2) between 10.76% and 83.51% of the damages alleged for Bayer Heart Advantage Class Members.

| | Full Refund Methodology (% recovery of settlement) | Out of Pocket Loss Methodology (% recovery of settlement) | Benefit of the Bargain Methodology (% recovery of settlement) | Unjust Enrichment Methodology (% recovery of settlement) |
|---|---|---|---|---|
| **Bayer Women's ($9 million allocation)** | $57.351[5] (15.69%) | $32.113 (28.02%) | $93.409 (9.63%) | $10.328 (87.14%) |
| **Bayer Heart Advantage ($6 million allocation)** | $33.241 (18.04%) | $23.934 (25.06%) | $45.942 (13.05%) | $7.634 (78.59%) |

---

[5] All dollar values are in millions of dollars.

|  | **Full Refund Methodology (% recovery of settlement)** | **Out of Pocket Loss Methodology (% recovery of settlement)** | **Benefit of the Bargain Methodology (% recovery of settlement)** | **Unjust Enrichment Methodology (% recovery of settlement)** |
|---|---|---|---|---|
| **Total** | $90.592 (16.55%) | $56.047 (26.76%) | $139.351 (10.76%) | $17.962 (83.51%) |

*See generally* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification at 11-12 (Dkt. # 112-1).

The Second Circuit recognizes "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Detroit v. Grinnell Corp*., 495 F.2d 448, 455 (2d Cir. 1974) (abrogated on other grounds by *Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000)). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2. Accordingly, courts in the Second Circuit "often approve class settlements even where the benefits represent only a fraction of the potential recovery." *Velez v. Novartis Pharms. Corp*., 2010 U.S. Dist. LEXIS 125945, at *40-41 (S.D.N.Y. Nov. 30, 2010) (quotation omitted) (collecting Second Circuit district and appellate court decisions approving settlements ranging from 1.6% to 12% of claimed damages). Here, the value of the settlement obtained by Plaintiffs represents significant percentages of Plaintiffs' claimed damages, providing the Class Members with a certain and immediate recovery. *Id.* at *40 ("Because settlement can provide certain and immediate recovery, courts often approve settlements even where the benefits obtained are less than those originally sought.").

This nationwide recovery is significant given the real risks Plaintiffs faced at class certification. While Class Counsel believe strongly in their ability to prove the claims plead, Plaintiffs faced significant risks with their ability to certify their state law claims on a nationwide basis.  Given that many courts perceive manageability problems with certifying multi-state class actions and although Plaintiffs believe that the facts presented here are amenable to class treatment, the risk of losing their Motion For Class Certification justifies a settlement here – where Plaintiffs have achieved a nationwide settlement that provides a significant recovery for the Class as a whole as well as the full estimated overcharge on an individual claim basis.

In short, "[s]ettlement at this stage in the litigation avoids additional expense and delay and ensures a prompt and substantial recovery for the Plaintiffs and class members."  *Khait*, 2009 U.S. Dist. LEXIS 114817, at *4 (*Grinnell,* 495 F.2d at 463).

### 2.     The Settlement Agreement Does Not Include Any "Obvious Deficiencies" That Would Render Class Notice and A Final Approval Hearing Futile.

The monetary relief provided by the parties' Settlement is well within "the reasonable range of approval" meriting preliminary approval. *Borlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1996).  In addition, there are no "obvious deficiencies" that would preclude approval of the settlement, such that notifying the class and proceeding to a formal fairness hearing would be a waste of time.  *Newberg on Class Actions*, § 11.25.  Thus where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval,

preliminary approval is granted." *Borlas*, 237 F.R.D. at 355 (quoting *In re NASDAQ*, 176 F.R.D. at 102).

The Settlement is not one which disproportionally favors certain class members at the expense of others.  Nor is approval of the settlement conditioned on an award of attorney fees to Settlement Class Counsel.  Any award of attorneys' fees and costs is subject to separate Court approval.  Moreover, the attorney fees potentially available to Settlement Class Counsel were not discussed or negotiated until *after* the parties had already agreed on relief for class members. Fegan Decl., ¶ 4-5; *see, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *Garst v. Franklin Life Ins. Co*., No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, *82 (N.D. Ala. June 25, 1999) ("[Fee] agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to between the parties.") (collecting cases).

The terms of the Settlement were reached only after extensive discovery and arm's-length negotiations between attorneys familiar with the legal and factual issues of the case and well versed in litigating consumer class claims.  Fegan Decl., ¶ 5; *see also* Settlement, pp. 5-6.  The parties naturally dispute the strength of the Plaintiffs' case, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes.  This case is complex, carries significant risks for all parties as to both legal and factual issues, and would consume a great deal of time and expense if the parties litigated it to the end.  In light of the risk and delay of litigation, weighed against the substantial benefits the settlement will provide to the class, the proposed resolution is a fair,

reasonable and adequate compromise of the issues in dispute and should be preliminarily approved. Indeed, preliminary approval requires only that "the proposed settlement is fair, adequate, and reasonable." *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 364 (E.D.N.Y. 2006) (internal quotation omitted).

## II. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

### A. The Proposed Class Meets The Requirements Under *Amchem* For Certification of A Settlement Class.

Before granting preliminary approval of a settlement in a case where a class has not yet been certified, the Court should determine whether the class proposed for settlement purposes is appropriate under Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual* § 21.632. To proceed as a class action, the litigation must satisfy the four prerequisites of Rule 23(a), otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, at least one of the three requirements of Rule 23(b) must be met. Fed. R. Civ. P. 23(b). In certifying a settlement class, however, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

Plaintiffs now request that the Court provisionally certify the proposed class for settlement purposes. Provisional class certification is appropriate at the preliminary approval stage where, as here, the proposed class has not previously been certified, and Plaintiffs and their counsel have created a substantial record supporting the propriety of class certification. *See Manual,* § 21.612 at 466. The practical purpose of provisional class certification is to facilitate

dissemination of notice to the class of the terms of the Settlement and the date and time of the final-approval hearing.  *See id.,* § 21.633.

### B.   The Numerosity, Commonality, Typicality, And Adequacy Requirements Are Met.

#### 1.   Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1)).  "A finding of numerosity may be supported by common sense assumptions… ."  *In re Playmobil Antitrust Litig.,* 35 F. Supp. 2d 231, 239 (E.D.N.Y. 1998).  Further, the Second Circuit has commented that "numerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Since the members of the Classes included in the Settlement purchased Bayer's Combination Aspirins across the country, there can be no doubt that the number of class members far exceeds the Second Circuit's low threshold for satisfying the numerosity standard. Numerosity is met.

#### 2.   Commonality and Typicality

The proposed Classes also meet the commonality requirement of Rule 23(a)(2), which requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). And, it meets Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "As a practical matter, the two requirements [commonality and typicality] merge in the Second Circuit's inquiry."  *Alleyne v. Time Moving & Storage, Inc.,* 264 F.R.D. 41, 48 (E.D.N.Y. 2010) (citing *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir. 1999)).  The commonality and typicality requirements are satisfied "when each class member's claim arises

from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, each of Plaintiffs' and the Class members' claims arise from the same course of events: their purchase of Bayer's Combination Aspirins that Plaintiffs allege do not provide the touted benefits over aspirin alone. Each Plaintiff and Class member allegedly paid more for the Combination Aspirins than they would have either for aspirin alone or for aspirin and a separate supplement, i.e., calcium or phytosterols.

The Plaintiffs proposed to serve as Class Representatives,[6] like every other class member, purchased Combination Aspirins within the class period, and have claims typical of those of the class.

### 3.    Adequacy

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, the proposed class representatives must "demonstrate that they have no interests that are antagonistic to the proposed class members" and class counsel must be qualified. *Myers v. Hertz Corp.,* Case No. 02-CV-4325, 2007 U.S. Dist. LEXIS 53572, at *18 (E.D.N.Y. July 24, 2007) (Cogan, J.).

The requirements of Rule 23(a)(4) are satisfied here. Plaintiffs do not have any unique relationships with Defendant, do not have interests that are antagonistic to the Class' claims, and are fully aligned with the interests of other Class members. In addition, each proposed Class Representative has demonstrated their willingness and ability to take the required role in the litigation and to protect the interests of those they seek to represent. Plaintiffs' effort is reflected in their respective consultations with counsel, preparing for and sitting for their depositions,

---

[6]    William Blank, Beverlysue Blank, Douglas Vinson, Anne McCabe. *See also* Settlement, § II(P).

responding to interrogatories, gathering documents and more.  And, Class Counsel have and will continue to fairly and adequately represent the interests of the Classes, and should be appointed as Class Counsel under Rule 23(g).  Like the other Rule 23(a) prerequisites, the adequacy standard is satisfied here.

### C.   Common Questions Predominate, And A Class Action Is The Superior Method To Adjudicate Class Members' Claims.

Finally, the proposed class meets the requirements of Rule 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem,* 521 U.S. at 623.  This test is "readily met in certain cases alleging consumer or securities fraud."  *Id.* at 625.

Here, as previously discussed above as to commonality and typicality, all class members share a common legal grievance arising from Bayer's practice of selling Combination Aspirins that do not and cannot provide the touted benefits over aspirin alone.  Common legal and factual questions - particularly the question of whether Bayer violated state statutory and common laws when it concealed and/or failed to disclose material facts that the Combination Aspirins were not effective as advertised - are central to all class members' claims and predominate over any individual questions that may exist.

Likewise, resolution of these common legal claims through a class-wide settlement and claims process is the superior way to proceed.  Rule 23(b)(3) lists four factors for courts to consider in determining whether a class action is superior, and each of these factors support a class-wide resolution.  First, class members have little interest in individually controlling separate lawsuits and settlement given the relatively small individual economic injuries involved, and those that do can choose to opt-out of the Settlement.  Second, it appears that no individual class members have chosen to commence litigation concerning this controversy except through

class litigation, further suggesting that a collective action is indeed the superior method of recovery. Third, the Judicial Panel on Multidistrict Litigation has already determined that this Court is an appropriate forum in which to concentrate class members' claims. And fourth, there will be no difficulties in managing a class-wide trial, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Resolution of all class members' claims, which arise from a common course of conduct by Bayer and depend on the resolution of common legal issues, through a class-wide settlement is a practical and legally proper course of action. Plaintiffs therefore respectfully request that the Court provisionally certify the class for settlement purposes only.

## III. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE.

### A. The Proposed Class Notice Provides for the Best Notice Practicable Under the Circumstances.

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must direct notice in a reasonable manner to class members who would be bound by the proposed class settlement. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir. N.Y. 2005) (citing *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983); Fed. R. Civ. P. 23(e)). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements;" rather, "the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). The proposed notice plan readily satisfies this standard.

18

Here, the parties propose that notice of the Settlement will be mailed to the last known addresses of class members for which Plaintiffs have obtained contact information. *See* Burke Decl., ¶ 12, 14, 20-21; *infra* at n.3. *See also* Fed. R. Civ. P. 23(c)(2) (directing that the best notice practicable under the circumstances should include individual notice to all members who can be identified through reasonable effort). In addition, the parties propose that the Summary Notice published nationwide in Reader's Digest, Good Housekeeping, Woman's Day, People, Time, Cooking Light, National Enquirer, Smithsonian, USA Today, The Wall Street Journal and AARP Bulletin. Under this proposal, Larkspur Design Group, which specializes in designing effective class action notice programs, estimates that at least 65 percent of the targeted adults will be reached an average of 2.9 times. Burke Decl., ¶ 22. This multi-faceted class notice program is thus reasonably calculated to apprise the Classes of the Settlement, and the Parties respectfully request that the Court adopt it in ordering class notice pursuant to Rule 23(e).

### B. The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation.

Any notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the Court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2).

The form of class notice proposed here complies with those requirements. *See* Burke Decl., ¶¶ 1, 8, 11, 41-43. The notice informs class members of the material terms of the Settlement Agreement; the relief the Settlement will provide; the date, time and place of the final-approval hearing; the procedures and deadlines for opting out of the settlement or submitting comments or objections; and that, if they do not opt out, they will be bound by any

final judgment in this case, including a release of claims.  *See* Settlement, Ex. D.  The proposed notice also advises class members that Plaintiffs' counsel have pursued the lawsuit on a contingent basis and have not received any payment of fees or any reimbursement of their out-of-pocket expenses.  *Id.*  The proposed notice further advises class members that Plaintiffs' counsel will apply to the Court for an award of fees and expenses, and that this award will be paid out of the Settlement Fund.  *Id*.

Thus, the notice is accurate and informs class members of the material terms of the settlement and their rights pertaining to it.  The class notice will also be posted on a website maintained by the settlement administrator, which will be prominently referenced in summary notice published in Reader's Digest, Good Housekeeping, Woman's Day, People, Time, Cooking Light, National Enquirer, Smithsonian, USA Today, The Wall Street Journal and AARP Bulletin.  The Court should therefore approve the proposed forms of class notice and summary notice, and direct that they be disseminated as proposed by the parties.

## PROPOSED SCHEDULE OF EVENTS

The next steps in the settlement approval process are to notify the Class of the Settlement, allow Class members an opportunity to file any objections, and hold a final approval hearing.  Toward those ends, the parties propose the following schedule, which is incorporated in the accompanying proposed order:

| Date | Event |
|---|---|
| 120 days after entry of Preliminary Approval Order | Last day to complete class notice. |
| 150 days after entry of Preliminary Approval Order | Last day for class members to request exclusion from the Settlement Class |
| 155 days after entry of Preliminary Approval Order | Last day for Claims Administrator to serve Lead Class Counsel, Bayer and the Court with the list of persons that have requested to opt out of any of the Settlement Classes ("Opt-Out List") |
| 28 days after service of the Opt-Out List | Last day to file papers in support of final approval of the settlement, declaration from the Claims Administrator regarding completion of the notice program, and any application for attorneys' fees and expenses. |
| 14 days after filing of Plaintiffs' Motion for Final Approval of the Settlement and Plaintiffs' Application for Attorneys' Fees and Expenses and Plaintiff Service Awards | Last day for Class members to file comments in support of, or in objection to, the settlement and/or fee application. |
| 28 days after filing of Plaintiffs' Motion for Final Approval of the Settlement and Plaintiffs' Application for Attorneys' Fees and Expenses and Plaintiff Service Awards | Last day for responses to any objections. |
| At the Court's convenience, but not earlier than 211 days after entry of Preliminary Approval Order | Final settlement approval hearing. |
| 270 days after entry of Preliminary Approval Order | Claims deadline. |

## **<u>CONCLUSION</u>**

For the reasons stated above, in their opening Motion, and in all documents submitted in support of the Motion, Plaintiffs respectfully request that the Court enter the [Proposed] Preliminary Approval Order, preliminarily approve the parties' proposed class action settlement, certify a Rule 23(b)(3) class for settlement purposes only, order notice of the Settlement to class members, and grant all such other relief that the Court deems necessary and appropriate.

Dated:  May 16, 2012     Respectfully submitted,


         By: /s/ Elizabeth A. Fegan     
         Elizabeth A. Fegan
         Daniel J. Kurowski
         Hagens Berman Sobol Shapiro LLP
         1144 W. Lake Street, Suite 400
         Oak Park, IL  60301
         Telephone:  (708) 628-4960
         Facsimile: (708) 628-4950
         Email: beth@hbsslaw.com
         Email: dank@hbsslaw.com

         Steve W. Berman
         Ivy Arai Tabbara
         Hagens Berman Sobol Shapiro LLP
         1918 Eighth Avenue, Suite 3300
         Seattle, WA 91810
         Telephone: (206) 623-7292
         Facsimile: (206) 623-0594
         Email: steve@hbsslaw.com
         Email: ivy@hbsslaw.com

         *Co-Lead Counsel for Plaintiffs*

         By: /s/ Michael A. London  
         Michael A. London
         Virginia Anello
         Douglas & London, P.C.
         111 John Street, 14th Floor
         New York, NY  10038
         Telephone:  (212) 566-7500
         Facsimile: (212) 566-7501
         Email: mlondon@douglasandlondon.com
         Email: vanello@douglasandlondon.com

         *Co-Lead and Liaison Counsel for Plaintiffs*

Andres F. Alonso
Alonso Krangle LLP
445 Broad Hollow Road, Suite 205
Melville, NY 11747
Telephone: (516) 350-5555

Jerrold S. Parker
Parker Waichman LLP
111 Great Neck Road, 1st Floor
Great Neck, NY 11021
Telephone: (516) 466-6500

Jeff Carton
Barry B. Cepelewicz
Meiselman, Denlea, Packman, Carton & Eberz P.C.
1311 Mamaroneck Avenue
White Plains, NY 10605
Telephone: (914) 517-5000

Daniel E. Becnel, Jr.
Becnel Law Offices
106 W 7th Street
Reserve, LA 70084
Telephone: (985) 536-1186

James G. Onder
Mark R. Niemeyer
Onder, Shelton, O'Leary & Peterson, LLC
110 East Lockwood
St. Louis, MO 63119
Telephone: (314) 963-9000

W. Lew Garrison
Gayle Douglas
William L. Bross, IV
Heninger Garrison Davis
2224 1st Avenue North
Birmingham, AL 35203
Telephone: (205) 326-3336

Daniel J. Mogin
The Mogin Law Firm P.C.
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone: (619) 687-6611

Scott W. Weinstein
Morgan & Morgan, P.A.
12800 University Drive, Suite 600
Fort Myers, FL 33907
Telephone: (239) 433-6880

J. Barton Goplerud
Hudson Mallaney Shindler & Anderson, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567

Daniel K. Touhy
Terrence Buehler
Touhy, Touhy, Buehler & Williams LLP
55 West Wacker, Suite 1400
Chicago, IL 60601
Telephone: (312) 372-2209

John W. Olivo, Jr.
John F. Ward
Ward & Olivo
380 Madison Avenue
New York, NY 10017
Telephone: (212) 697-6262

David J. Cohen, Esq.
Kolman Ely, P.C.
414 Hulmeville Avenue
Penndel, PA 19147
Telephone: (215) 750-3134

Kathleen Chavez
Chavez Law Firm, P.C.
3 North 2nd Street, Suite 300
St Charles, IL 60174
Telephone: (630) 232-4480

Robert Foote
Matthew J. Herman
Foote, Meyers, Mielke & Flowers, LLC
3 North 2nd Street, Suite 300
St Charles, IL 60174
Telephone: (630) 232-6333

*Additional counsel for Plaintiffs and the putative classes*