Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
1144 W. Lake Street, Suite 400
Oak Park, IL  60301
Telephone:  (708) 628-4960

*Co-Lead Counsel for Plaintiffs*

Michael A. London
Douglas & London, P.C.
111 John Street, 14th Floor
New York, NY  10038
Telephone:  (212) 566-7500

*Co-Lead and Liaison Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:  BAYER CORP. COMBINATION ASPIRIN PRODUCTS MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS PLEADING RELATES TO:<br><br>ALL CASES | 09-md-2023 (BMC)(JMA)<br><br>**COGAN**, District Judge |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     INVESTMENT OF TIME AND MONEY IN THE CASE..................................2

III.    ARGUMENT ......................................................................................................2

    A.      Reasonable Attorneys' Fees Should Be Awarded ....................................2

        1.      The percentage requested here is reasonable. ...............................2

        2.      A lodestar cross-check confirms the reasonableness of Plaintiffs'
              percentage-of-the-fund fee request. ..............................................4

        3.      An analysis of the *Goldberger* factors further favors approval of
              Plaintiffs' fee request. ..................................................................7

            a.      Time and labor of Plaintiffs' Counsel............................8

            b.      This MDL's magnitude and complexities......................10

            c.      The litigation risk.........................................................10

            d.      Class and Plaintiffs' Counsel have provided quality
               representation. ..............................................................11

            e.      The fee in relation to the settlement..............................12

            f.      Public policy considerations favor an award of attorneys'
               fees. ..............................................................................12

    B.      Plaintiffs' Counsel Should be Reimbursed for Their Expenses.............13

    C.      Service Awards are Warranted for the Four Class Plaintiffs ................14

IV.     CONCLUSION.................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
522 F.3d 182 (2d Cir. 2007)..........................................................................5

*Dupler v. Costco Wholesale Corp.,*
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ....................................................4, 6, 15

*Ebbert v. Nassau County,*
No. CV 05-5445 (AKT), 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ..................5

*Goldberger v. Integrated Res. Inc.,*
209 F.3d 43 (2d Cir. 2000)......................................................................2, 5, 8

*In re MetLife Demutualization Litig.,*
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................4, 6, 11, 12

*In Re NTL, Inc. Sec. Litig.,*
No. 02 Civ. 3013 (LAK) (ASP), 2007 WL 623808 (S.D.N.Y. Mar. 1, 2007).............5, 6

*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3d Cir. 2005)......................................................................5

*In re Visa Check/Mastermoney,*
297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd*, 396 F.3d 96 (2d Cir. 2005)............14

*In re Vitamin C Antitrust Litig.,*
No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ............. *passim*

*Massiah v. MetroPlus Health Plan, Inc.,*
No. 11-cv-5669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)........................ *passim*

*McAnaney v. Astoria Fin. Corp.,*
No. 04-1101, 2011 U.S. Dist. LEXIS 114768 (E.D.N.Y. Feb. 11, 2011) ................15

*Parker v. Time Warner Entm't Co., L.P.,*
631 F. Supp. 2d 242 (E.D.N.Y. 2009) ..............................................................15

*Steinberg v. Nationwide Mut. Ins. Co.,*
612 F. Supp. 2d 219 (E.D.N.Y. 2009) ........................................................10, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96 (2d Cir. 2005).........................................................................3

010084-12  580250 V1

## I.    INTRODUCTION

Following particularly hard-fought litigation that included a motion to dismiss, extensive written and oral discovery (involving 2.5 million pages of documents and dozens of depositions), a fully briefed motion for class certification (supported by extensive factual and legal research), and five motions to strike defendant's expert declarations, the Parties[1] settled this consumer protection, breach of warranty, and unjust enrichment class action for a significant cash payment of $15,000,000.  The Settlement, reached only after negotiations before two mediators (including a failed mediation attempt), was achieved through the dedicated efforts of Class Counsel and other Plaintiffs' Counsel working diligently, without compensation, since 2008 to represent the members of the Settlement Classes.

While the concurrently-filed Memorandum in Support of Motion for Final Approval demonstrates why the Settlement is a fair, adequate and reasonable result for the Classes and should be approved, this memorandum addresses Class Counsel's request for:  (i) an award of attorneys' fees in the amount of $4,500,000, which represents 30% of the Settlement Amount and 53% of Plaintiffs' Counsels' actual lodestar, (ii) reimbursement of out-of-pocket litigation expenses of $600,000; and (iii) approval of a $2,5000.00 Incentive Award to each Named Plaintiff in recognition of their valuable services to the Class.

As demonstrated below, the record in this case and the case law in the Second Circuit fully support the requested fees, expenses, and service awards.  An award of 30% of the Settlement Fund is a reasonable and typical portion of a settlement to be awarded as fees and is well within the range of fee percentages approved in the Second Circuit.  Indeed, this Court has recognized as much:  "A fee of 30% of the fund is reasonable and consistent with the norms of

---

[1] Unless otherwise noted, all capitalized terms refer to terms in the Settlement Agreement and Release ("Settlement" or "Settlement Agreement").

class litigation in this circuit." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-5669 (BMC), 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (Cogan, J.).  Accordingly, Plaintiffs respectfully request that the motion be granted.

## II.     INVESTMENT OF TIME AND MONEY IN THE CASE

Class Counsel and other Plaintiffs' Counsel have devoted more than 20,734 hours to this case, documenting a lodestar of approximately $8,536,122 at their regular hourly rates, and $609,595.53 in out-of-pocket expenses.  *See* Exs. 1-2 (Class Counsel's fee and expense declarations), Ex. 3 (litigation fund); 4-16 (Plaintiffs' Counsel's fee and expense declarations). Moreover, Class Counsel will continue to incur additional hours and expenses in connection with final approval, responding to inquiries from Class Members, interacting with the Claims Administrator, and generally overseeing implementation of the Settlement.

## III.     ARGUMENT

### A.     Reasonable Attorneys' Fees Should Be Awarded

Given the successful result obtained in this case by Class Counsel and Plaintiffs' Counsel, Plaintiffs request this Court approve a fee of $4,500,000, plus interest accrued on that amount, if any.  The amount requested is consistent with percentages awarded in complex, contingent litigation such as this, is supported by a lodestar cross-check, and meets the multifactor test set out in *Goldberger v. Integrated Res. Inc*., 209 F.3d 43 (2d Cir. 2000).

#### 1.     The percentage requested here is reasonable.

First, reasonable attorneys' fees should be awarded under a percentage-of-the-fund approach.  "Rule 23(h) allows the Court to award reasonable attorneys' fees to counsel for a certified class."  *In re Vitamin C Antitrust Litig*., No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *9 (E.D.N.Y. Oct. 23, 2012) (Cogan, J.).  *See also* Fed. R. Civ. P. 23(h) (authorizing courts to "award reasonable attorneys' fees and nontaxable costs that are authorized by law or by

the parties' agreement"). "Where a class action settlement creates a common fund the plaintiffs'

attorneys are entitled to a reasonable fee – set by the court – to be taken from the fund.'" *Id.*

(quoting *In re Ashanti Goldfields Sec. Litig.*, No.00-cv-717, 2005 WL 3050284, at *2 (E.D.N.Y.

Nov. 15, 2005); *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000)). "In awarding a

fee, the court must act 'with moderation and a jealous regard to the rights of those who are

interested in the fund.'" *Id.* (quoting *Grinnell*, 495 F.2d at 469).

      In determining a reasonable attorneys' fee, "[t]he Second Circuit allows courts to use

either the lodestar method or a method based on the percentage of the settlement fund," though

"the trend in the Second Circuit is to utilize the percentage method." *Id.* (citing *Goldberger*, 209

F.3d at 50; *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2011 WL 2909162,

at *5 (E.D.N.Y. July 15, 2011)). In explaining why courts favor the percentage-of-the-fund

approach over the lodestar approach, the Second Circuit notes that the former "directly aligns the

interests of the class and its counsel and provides a powerful incentive for the efficient

prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396

F.3d 96, 122 (2d Cir. 2005) (quotation omitted). "In contrast, the lodestar create[s] an

unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and

compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.*

(quotation omitted, alteration in original).

      In making their percentage-of-the-fund request for their time in this case, Plaintiffs do so

without objection by Bayer, *see* Settlement Agreement, § VII.B., and in line with what this Court

has recognized as an appropriate percentage in this Circuit. As referenced above, in *Massiah v.*

*MetroPlus Health Plan, Inc.*, the Court approved a "fee of 30% of the fund" as "reasonable and

consistent with the norms of class litigation in this circuit." 2012 WL 5874655, at *7. There, the

Plaintiffs achieved a smaller settlement than that achieved here – $4,040,000 – in an employment case involving alleged overtime violations, awarding "Class Counsel $1,212,000 in attorneys' fees, or thirty percent of the fund (including any interest in the fund)." *Id.* at *6. *See also In re Vitamin C*, 2012 WL 5289514, at *10 (quoting *In re Lloyd's Am. Trust. Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *26-27 (S.D.N.Y. Nov. 26, 2001), for its proposition that "'there are scores of common fund cases where fees alone … were awarded in the range of 33-1/3% of the settlement fund'" and its observation "that lodestar multiples between 3 and 4.5 had 'become common'"); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) (collecting multiple district court decisions in the Second Circuit awarding 30% of the total settlement fund and more).  Accordingly, the 30% requested here is reasonable and should be approved.

> **2.**     **A lodestar cross-check confirms the reasonableness of Plaintiffs' percentage-of-the-fund fee request.**

A lodestar cross-check also confirms the reasonableness of the fee request here.  While the Second Circuit has found "no need to compel district courts to undertake the cumbersome, enervating, and often surrealistic process of lodestar computation," "district courts are encouraged to require 'documentation of hours as a cross-check on the reasonableness of the requested percentage.'"  *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 242-43 (E.D.N.Y. 2010).  And, "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized" by the district court.  *Id.* at 243 (quoting *Goldberger*, 209 F.3d at 50).  "Instead, the reasonableness of the claimed lodestar can be tested by the court's

familiarity with the case (as well as encouraged by the strictures of Rule 11)."[2]  *Goldberger*, 209 F.3d at 50.

Throughout the lawsuit, Class Counsel and Plaintiffs' Counsel tracked their hours.  Using the lodestar method as a cross-check on the requested fee confirms the reasonableness of the 30% fee request.  Plaintiffs' Counsel have collectively incurred 20,734 hours and $8,536,122 at their customary rates in prosecuting the case against Bayer.[3]  As the Court can observe, this amount requested represents a negative multiplier of .53.  "In the 'usual' case, the multiplier applied to the lodestar typically is positive, to account for the contingent nature of the engagement and the risk of such a case," or to reflect "the result obtained, and the quality of the attorney's work."  *In Re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (ASP), 2007 WL 623808,

---

[2] Notably, in conducting this cross-check, the Third Circuit has noted that "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005).  Here, Plaintiffs can provide their detailed time records *in camera* upon request.

[3] Regarding the subject of hourly rates generally, while courts within the Eastern District have evaluated ranges of fees "typically awarded in complex cases" in cases pending here, *see, e.g.*, *Ebbert v. Nassau County*, No. CV 05-5445 (AKT), 2011 WL 6826121, at *16 (E.D.N.Y. Dec. 22, 2011), "courts have approved, in class actions where the defendants have agreed to pay the specific attorneys' fees, a lodestar based on billable rates of between $405 and $790 for partners and $270 to $500 for associates."  *Id.* (collecting cases).  In evaluating rates awarded, courts in the district appear to rely heavily on the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182 (2d Cir. 2007).  *See id.* at 183-84 ("While the district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the 'lodestar' – what we think is more aptly termed the 'presumptively reasonable fee' – the district court may adjust this base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel, just as it may adjust the base hourly rate to account for other case-specific variables.").  Moreover, this Court has found *Arbor Hill* not controlling in evaluating common fund fee awards, but nevertheless supporting contingent percentage-of-the-fund awards.  *See Massiah*, 2012 WL 5874655, at *8 ("While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success.").  And, the MDL nature of this action justifies consideration of Plaintiffs' Counsel's customary rates as all but one of the cases coordinated here were filed elsewhere.

at *8 (S.D.N.Y. Mar. 1, 2007); *MetLife*, 689 F. Supp. 2d at 360.  Thus, a negative lodestar further

supports the reasonableness of the fee request.

       *MetLife* illustrates this point.  There*,* the plaintiffs' counsel achieved a $50 million

settlement, but reported a total lodestar of approximately $42.8 million.  689 F. Supp. 2d at 360.

In approving a $10.5 million fee request, the court found that the "lodestar cross-check supports

the requested percentage fee," explaining that the fee represented "a fraction rather than a

multiple of counsel's accumulated lodestar."  *Id.*  And, the court noted that "[a] full lodestar

award with an adequate multiplier would have left almost nothing for the class."  *Id*.

Accordingly, given the effort undertaken by Class Counsel and Plaintiffs' Counsel and the

significant result achieved here, there can be no doubt that "the objective of preventing

unwarranted windfalls to attorneys is achieved."  *Dupler*, 705 F. Supp. 2d at 242-43.  The

lodestar cross-check supports Plaintiffs' percentage-of-the-fund request.

       Finally, at the outset of the case, Class Counsel submitted their application to the Court

for appointment.  At that time, Pretrial Order No. 2 directed counsel for Plaintiffs to set forth any

fee proposals, rates and percentages that they would seek if the litigation were successful.  In

response, Class Counsel's working group then stated:

> The Consensus Plaintiffs propose that the Court use the percentage
> of the fund method, while using the lodestar method as a cross-
> check to ensure that the award does not result in a windfall.  At this
> time it is not practically possible to foresee how quickly or
> successfully this case will be resolved, and therefore it is not
> practically possible to commit to a specific fee now for the entire
> litigation.  The Consensus Plaintiffs do commit, however, that its
> fee application will be no greater than 25% of the value of the
> common fund or 5 times the amount of the cumulative lodestar
> submitted by Plaintiffs' counsel.  In addition, the Consensus
> Plaintiffs propose that the Court enter a case management order
> requiring proper timekeeping allowing lead counsel to monitor all
> time and expenses spent during the litigation.  Additionally,
> proposed co-lead counsel, Michael A. London of Douglas &

> London and Elizabeth A. Fegan of Hagens Berman Sobol Shapiro
> LLP, each propose to charge a regular hourly rate of $400 per
> hour.

Letter dated May 27, 2009 (Doc. # 14).  While Plaintiffs are now seeking 30% of the common

fund in attorneys' fees, that amount is just .53 of total lodestar – "far less than 5 times the

amount of the cumulative lodestar submitted by Plaintiffs' counsel." *Id.*

Moreover, even with Ms. Fegan's and Mr. London's billing rates capped at $400/hour,[4]

the cumulative lodestar would still be $8,101,170 and an award of 30% of the common fund

would still be a negative multiplier of .56.  And, while Plaintiffs proposed capping only Ms.

Fegan's and Mr. London's billing rates, the reasonable fee requested here – $4,500,000 – will

ensure that the effective billing rates paid from the Settlement will be lower across all levels of

attorneys.  Were Plaintiffs to request reimbursement of all incurred fees, Plaintiffs would be

awarded an average hourly rate of $411.  But here, the rate is much lower, as dividing the

requested fee ($4,500,000) by the total number of hours invested (20,734) reflects an average

billing rate of $217 per hour.

Accordingly, Class Counsel respectfully requests that this Court find that the lodestar

cross-check supports the requested fee award.

### 3.    An analysis of the *Goldberger* factors further favors approval of Plaintiffs' fee request.

Furthermore, courts in the Second Circuit evaluate fee requests under the *Goldberger*

factors, which include:

> (1) the time and labor expended by counsel; (2) the magnitude and
> complexities of the litigation; (3) the risk of the litigation …;

---

[4] Here, Elizabeth Fegan billed 1,699.60 hours, representing a $679,840 lodestar at a $400/hr rate – a $212,450 reduction from her ordinary billing rates.  Michael London billed 870.41 hours, representing a $348,164 lodestar at a $400/hr rate – a $217,602.50 reduction from his ordinary billing rates.

(4) the quality of representation; (5) the requested fee in relation to
the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (quotation omitted).  A review of these factors support Plaintiffs' fee
request.

### a.   Time and labor of Plaintiffs' Counsel.

First, as Class Counsel and other Plaintiffs' Counsel describe in their accompanying

declarations, they have devoted more than 20,734 hours litigating against Bayer.  *See* Exs. 1-2, 4-

16.  This work includes, but is not limited to, items such as:

- Researching and drafting the Master Complaint (*see* Doc. # 29);

- Preparing for and presenting at multiple court proceedings, including, but limited
  to, hearings on May 13, 2009, July 13, 2009, October 13, 2009, March 8, 2010,
  April 6, 2010, September 27, 2010, January 21, 2011, March 2, 2011, and July 22,
  2012 (*see* generally Docket);

- Negotiating the Electronic Discovery Protocol and Protective Order (*see* Doc. #
  33);

- Litigating Bayer's Motion to Dismiss the Master Complaint and Motion for
  Judicial Notice (*see*, *e.g.*, Doc. # 52-53, 61);

- Preparing and addressing various discovery issues and/or disputes  (*see*, *e.g.*, Doc.
  # 42, 60, 79, 87, 94-95, 131, 132, 177, 183);

- Nearly completing full merits discovery, which included the analysis of
  approximately 2.5 million pages produced by Bayer and third parties (including
  subpoenas to the top retailers selling the Combination Aspirin Products in order to
  facilitate direct notice) (*see* Settlement at p. 6; Doc. # 181);

- Preparing for, conducting or defending fifteen depositions of fact witnesses, depositions of the four Named Plaintiffs, nine depositions of former named Plaintiffs, depositions of each of Class Plaintiffs' three expert witnesses, and depositions of four of Bayer's five expert witnesses (*see* Settlement at p. 6);

- Working with three experts to prepare expert reports submitted in support of class certification (*see*, *e.g.*, Doc. # 112-117, 121, 162-165);

- Preparing Plaintiffs' extensively-researched Motion for Class Certification and Proffer of Facts, and then rebutting Bayer's opposition to litigation class certification (*see*, *e.g.*, Doc. # 112-117, 121, 162-165);

- Moving to exclude the expert report and testimony of each of Bayer's five expert witnesses (*see* Doc. # 151-156, 170);

- Conducting formal mediation sessions before two different mediators and conducting over seven months of extensive negotiations, all at arm's length (*see* Settlement at p. 6); and

- Moving for preliminary approval and final approval, including working with notice experts in order to develop and implement the Court-ordered notice plan (*see*, *e.g.*, Doc. # 175-76).

Given the extensive amount of time Class Counsel and Plaintiffs' Counsel have expended in this action (covering every aspect of litigation from pre-filing investigation, extensive discovery through hotly contested motion practice), the 30% requested here is very reasonable and still results in a negative lodestar multiple of .53. And, Class Counsel will expend additional time finalizing the Settlement in this action, such as responding to objectors should there be any. This factor has been met.

### b.      This MDL's magnitude and complexities.

The second *Goldberger* factor also favors approval of Plaintiffs' fee.  The decision in

*Steinberg v. Nationwide Mut. Ins. Co.*, is helpful here.  612 F. Supp. 2d 219 (E.D.N.Y. 2009).  In

*Steinberg*, in approving a fee and expense award*,* the court noted that this *Goldberger* factor can

be met, even where "the underlying facts were not particularly complex," but "the procedural

history of this case, including extensive motion practice, discovery, and complicated

negotiations, reflects the considerable magnitude of this litigation." *Id.* at 223.  Looking at this

test quickly confirms the MDL's magnitude and complexities.  This MDL proceeding, created

following the filing of lawsuits from coast to coast, involved complex factual, scientific, and

legal issues.  Indeed, as readily apparent in the certification briefing, as well as the motions to

strike, Plaintiffs utilized medical experts versed in scientific issues concerning calcium, Vitamin

D and phytosterols to aid them in their arguments that the Combination Aspirin Products could

neither fight osteoporosis nor lower cholesterol.  Moreover, the case presented potential

obstacles regarding whether a nation-wide class, or in the alternative, multi-state classes could be

certified.  *See* Preliminary Approval Tr. at 12, 15-16, 24, 31, 33 (discussing various risks faced in

the litigation as supporting preliminary approval of settlement).[5]  This factor is satisfied.

### c.      The litigation risk.

Third, there can be no question that Class Counsel and Plaintiffs' Counsel faced

substantial risk in litigating this class action.  They took on these cases with contingency

agreements, their payment subject only to success.  This Court has identified that such risks

support reasonableness of a requested fee.  *See Vitamin C*, 2012 WL 5289514, at *10

---

[5] The Preliminary Approval Transcript is attached as Exhibit 2 to the Declaration of Daniel J. Kurowski in Support of Plaintiffs' Motion for Final Approval of Class Settlement (filed separately).

("Additionally, counsel faced substantial risks in litigating this action, especially on a contingency fee basis."); *Massiah*, 2012 WL 5874655, at \*8 (noting "Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation" and approving … a one-third recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success."). Moreover, courts even recognize such risk as supporting a positive multiplier, though one is not requested here. *See*, *e.g.*, *MetLife*, 689 F. Supp. 2d at 359 ("Fees representing multiples above the lodestar are often awarded to reflect the risk and contingent nature of the litigation… ."). Moreover, Class Counsel faced "[t]he risk of obtaining and maintaining class status throughout trial," particularly where "[a] motion to certify and/or decertify the class would likely require more extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing." *Massiah*, 2012 WL 5874655, at \*5. And of course, the risk at trial remained present. This factor is easily met.

### d. Class and Plaintiffs' Counsel have provided quality representation.

This fourth *Goldberger* factor is also readily met here. "To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Steinberg*, 612 F. Supp. 2d at 223.

To start, the $15,000,000 obtained here speaks for itself. This Court has already recognized this amount as significant. Preliminary Approval Tr. at 44. Moreover, Class Counsel are skilled in complex litigation and recognized in their fields for high quality. *See* Ex. 1 (Fegan Decl.) and Ex. 2 (London Decl.). The backgrounds of Plaintiffs' Counsel also confirm they are experienced litigators in complex and class litigation. *See* Ex. 4 to 16. Here, Michael London and Elizabeth Fegan demonstrated their experience and leadership skills in prosecuting this class action in a fair, efficient and successful manner. Moreover, they have successfully worked with multiple groups of law firms to ensure that the interests of all Plaintiffs and Class Members were

- 11 -

considered and protected.  They brought their exceptional abilities to bear on behalf of all

Plaintiffs not only in the quality of the legal work performed but in their tenacity and skill at the

negotiating table.

### e.    The fee in relation to the settlement.

This Court has described the fifth *Goldberger* factor "of the greatest use in assessing the

reasonableness of the proposed fee award because it requires an examination of the amount of

the award in the context of the size of the settlement fund."  *Vitamin C*, 2012 WL 5289514, at

*10.  The fee sought here is reasonable whether looking to the percentage-of-the-fund approach

or lodestar.  *See id.* (quoting *In re Lloyd's Am. Trust. Fund Litig.*, 2002 WL 31663577, at *26-27

(S.D.N.Y. Nov. 26, 2001), for its proposition that "'there are scores of common fund cases where

fees alone … were awarded in the range of 33-1/3% of the settlement fund'" and its observation

"that lodestar multiples between 3 and 4.5 had 'become common'").  *See also In re MetLife*

*Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) (collecting multiple district court

decisions in the Second Circuit awarding 30% of the total settlement fund and more).  Plaintiffs

seek 30%, an amount in line with other common fund cases.  Indeed, looking to the lodestar

approach confirms the reasonableness, given that it reflects a negative multiplier of .53.  Thus,

the fifth *Goldberger* factor is met here.

### f.    Public policy considerations favor an award of attorneys' fees.

Finally, public policy considerations favor the requested fee award here.  This case

sought recovery of economic damages related to the sale of over-the-counter medicinal products,

with individual damages per purchase small in light of aggregate damages.  As such, reasonable

fee awards must be provided in order to ensure that such wrongdoing, like that alleged here, will

be remedied.  This Court's recognition of the importance of Plaintiffs' counsel in serving as

'private attorneys general' satisfies this factor.

"Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role." *Massiah*, 2012 WL 5874655, at *7 (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980)). As a result, "[a]ttorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk." *Id*. (quoting *Goldberger*, 209 F.3d at 51, for its commendation of the "general 'sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest'"). As a result, this sixth *Goldberger* factor, like the others before it, has been met here. Accordingly, reasonableness of a common fund fee is met under the facts presented here.

**B.      Plaintiffs' Counsel Should be Reimbursed for Their Expenses**

Collectively, Plaintiffs have incurred $609,595.53 in expenses. *See* Ex. 1-2, 4-16. However, Class Counsel request reimbursement of $600,000 in expenses incurred in the prosecution of this litigation since its inception. Generally, "'[c]ounsel is entitled to reimbursement from the common fund for reasonable litigation expenses.'" *In re Vitamin C*, 2012 WL 5289514, at *11 (quoting *In re Ashanti Goldfields Sec. Litig.*, 2005 WL 3050284, at *5). And, "[c]ourts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *Id*. (quoting *In re Arakis Energy Corp. Sec. Litig.*, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001)).

These expenses are described in Class Counsel's and Plaintiffs' Counsel fee and expense declarations, *see* Exs. 1-2 and 4-16, as well as in the Declaration of Michael London Regarding Expenses Paid By Plaintiffs From the Bayer Corp. Combination Aspirin Litigation Fund. Ex. 3.[6] These expenses include: copying costs, legal research, expert costs, travel costs, deposition

---

[6] Collectively, Plaintiffs report $623,130.13 in actual expenses, but have incurred $609,595.53 in expenses, to account for the $13,534.60 litigation fund balance. Ex. 4, ¶ 18.

- 13 -

expenses, costs related to hosting and managing the document review system, and costs incurred related to service of the numerous subpoenas issued here. *See generally id.* To be sure, these reflect commonly reimbursed expenses. *See*, *e.g.*, *Vitamin C*, 2012 WL 5289514, at *11 ("The principal expenses for which Class Counsel seeks reimbursement are expert witness costs, deposition reporters and transcripts … copying, travel, research, and court-filings – all of which are appropriate for reimbursement."); *In re Visa Check/Mastermoney*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (awarding costs and expenses, noting "these expenses reflect the costs of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses," adding "I see no reason to depart from the common practice in this circuit of granting expense requests"), *aff'd*, 396 F.3d 96 (2d Cir. 2005). As a result, Plaintiffs respectfully request reimbursement of $600,000 in expenses.

## C. Service Awards are Warranted for the Four Class Plaintiffs

Plaintiffs also request the Court award $2,500 service awards to each of the four Class Plaintiffs, to take into account their time and effort in leading the case against Bayer. The Settlement provides that, subject to Court approval, Bayer will not object to service awards of up to $2,500 each. The Court should approve the requested and unopposed service awards.

While by no means a matter of right or guarantee, "[c]ourts often grant incentive awards to representative plaintiffs." *Vitamin C*, 2012 WL 5289514, at *11. "'The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.'" *Id.* (quoting *In re Currency Conversion Fee Antitrust Litig.*, 2012 WL 3878825, at *2 (S.D.N.Y. Aug. 22, 2012)). Additionally, "[i]n granting an incentive award, 'a court must ensure that the named plaintiffs, as fiduciaries for the class, have not been tempted to receive high incentive awards in exchange for accepting suboptimal settlements for absent class members,'" as "'[a] particularly suspect

arrangement exists where the incentive payments are greatly disproportionate to the recovery set aside for absent class members.'"  *Id.* (quoting *Sheppard v. Consol. Edison Co. of New York, Inc.*, 2002 WL 2003206, at *6 (E.D.N.Y. Aug. 1, 2001)).

Here, each Class Plaintiff has diligently performed their obligations as class representatives.  Throughout the case, Class Plaintiffs remained apprised of the litigation, communicating with Class Counsel and Plaintiffs' Counsel to ensure the effective prosecution of the case.  They worked with counsel in order to prepare, finalize and verify written discovery responses.  Each sat for a deposition, which included Bayer's inquiry into each Class Plaintiffs' personal medical history and background.

Moreover, the amount requested is not greatly disproportionate with the recovery set aside for absent class members.  Instead, it is fair and consistent with what courts have awarded in this district.  *See, e.g.*, *McAnaney v. Astoria Fin. Corp.*, No. 04-1101, 2011 U.S. Dist. LEXIS 114768, at *33 (E.D.N.Y. Feb. 11, 2011) (authorizing incentive payments of $7,500 each to seven named plaintiffs in a real-estate closing fee case alleging violations of TILA, state consumer protection statutes, breach of contract, fraud and unjust enrichment.  "The Court finds that the incentive payments to the named plaintiffs are justified in light of the named plaintiffs' willingness to devote their time and energy to this action and are reasonable in light of the overall benefit [estimated at $12 million] conferred on the Class"); *Dupler*, 705 F. Supp. 2d at 245 (approving $25,000 and $5,000 service awards to two plaintiffs in a settlement valued at $38 million and involving allegations that the warehouse chain's backdating of membership renewals was a deceptive practice under New York's consumer fraud statute); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 269 (E.D.N.Y. 2009) (granting service awards of $1,500 each to named plaintiffs settlement valued by the court at "$7.2 million plus the

attorneys' fees and expenses awarded by the Court" involving consumer class action alleging cable television company unlawfully collected personal information about its subscribers). Reasonable $2,500 service awards should be approved for each of the four Class Plaintiffs.

## IV.    CONCLUSION

Accordingly, for the reasons provided above, Plaintiffs respectfully request this Court grant their request for attorneys' fees in the amount of $4,500,000 (30% of the Settlement Amount), plus interest on that amount, if any, reimbursement of expenses actually incurred of $600,000 and service awards for each of the four Class Plaintiffs of $2,500 each.

Dated:  January 22, 2013        Respectfully submitted,

By:  ___/s/ Elizabeth A. Fegan_____
Elizabeth A. Fegan
Daniel J. Kurowski
Hagens Berman Sobol Shapiro LLP
1144 W. Lake Street, Suite 400
Oak Park, IL  60301
Telephone:  (708) 628-4960
Facsimile: (708) 628-4950
E-mail: beth@hbsslaw.com
E-mail: dank@hbsslaw.com

Steve W. Berman
Ivy Arai Tabbara
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  91810
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email:  steve@hbsslaw.com
       ivy@hbsslaw.com

*Co-Lead Counsel for Plaintiffs*

By:  ___/s/ Michael A. London_____
Michael A. London
Virginia Anello
Douglas & London, P.C.
111 John Street, 14th Floor
New York, NY  10038
Telephone:  (212) 566-7500
Facsimile:  (212) 566-7501
Email:  mlondon@douglasandlondon.com
Email:  vanello@douglasandlondon.com

*Co-Lead and Liaison Counsel for Plaintiffs*

Andres F. Alonso
Alonso Krangle LLP
445 Broad Hollow Road, Suite 205
Melville, NY  11747
Telephone:  (516) 350-5555

Jerrold S. Parker
Parker Waichman LLP
111 Great Neck Road, 1st Floor
Great Neck, NY  11021
Telephone:  (516) 466-6500

Greg Blankinship
Meiselman, Packman, Nealon,
Scialabba & Baker P.C.
1311 Mamaroneck Avenue
White Plains, NY  10605
Telephone:  (914) 517-5000

Daniel E. Becnel, Jr.
Becnel Law Offices
106 W 7th Street
Reserve, LA  70084
Telephone:  (985) 536-1186

James G. Onder
Mark R. Niemeyer
Onder, Shelton, O'Leary & Peterson, LLC
110 East Lockwood
St. Louis, MO  63119
Telephone:  (314) 963-9000

W. Lew Garrison
Gayle Douglas
William L. Bross, IV
Heninger Garrison Davis
2224 1st Avenue North
Birmingham, AL  35203
Telephone:  (205) 326-3336

Daniel J. Mogin
The Mogin Law Firm P.C.
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  (619) 687-6611

Scott W. Weinstein
Morgan & Morgan, P.A.
12800 University Drive, Suite 600
Fort Myers, FL  33907
Telephone:  (239) 433-6880

- 18 -

J. Barton Goplerud
Hudson Mallaney Shindler & Anderson, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA  50265
Telephone:  (515) 223-4567

Daniel K. Touhy
Terrence Buehler
Touhy, Touhy, Buehler & Williams LLP
55 West Wacker, Suite 1400
Chicago, IL  60601
Telephone:  (312) 372-2209

John W. Olivo, Jr.
John F. Ward
Ward & Olivo
380 Madison Avenue
New York, NY  10017
Telephone:  (212) 697-6262

David J. Cohen, Esq.
Kolman Ely, P.C.
414 Hulmeville Avenue
Penndel, PA  19147
Telephone:  (215) 750-3134

Kathleen Chavez
Chavez Law Firm, P.C.
3 North 2nd Street, Suite 300
St. Charles, IL  60174
Telephone:  (630) 232-4480

Matthew J. Herman
Robert Foote
Stephen William Fung
Foote, Meyers, Mielke & Flowers, LLC
3 North 2nd Street, Suite 300
St. Charles, IL  60174
Telephone:  (630) 232-6333

*Additional counsel for Plaintiffs and the putative classes*