UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: BAYER CORP. COMBINATION ASPIRIN PRODUCTS MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS PLEADING RELATES TO:<br><br>ALL CASES | 09-md-2023 (BMC)(JMA)<br><br>**COGAN**, District Judge |

# FINAL ORDER AND JUDGMENT

This matter, having come before the Court on Plaintiffs' Motion for Final Approval, the Court after conducting a fairness hearing, considering all arguments in support of and/or in opposition to the Settlement Agreement and Release,[1] as amended by the Amendment to the Settlement Agreement and Release dated March 1, 2013 ("Amendment" or "Settlement Agreement, as amended"), finds and/or orders the following:

1. The Court has personal jurisdiction over the Class Plaintiffs and all members of the Settlement Classes. This Court also determines that it possesses subject matter jurisdiction to approve the Settlement Agreement and Release, all Exhibits thereto, and the Amendment.

2. The Court certifies the following Settlement Classes solely for purposes of this Settlement, finding that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied:

> **"Bayer Aspirin With Heart Advantage" Class:** All persons who from January 1, 2008 to July 23, 2012, purchased Bayer® Aspirin With Heart Advantage in the United States for personal, family or household uses. Excluded from the Settlement Class are any

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement, as amended.

1

Judges to whom this Action is assigned and any member of their immediate families.

**"Bayer Women's Low-Dose Aspirin + Calcium" Class:** All persons who from January 1, 2000 to July 23, 2012, purchased Bayer® Women's Low Dose Aspirin + Calcium in the United States for personal, family or household uses. Excluded from the Settlement Class are any Judges to whom this Action is assigned and any member of their immediate families.

3. Regarding the Rule 23(a) requirements, the Court finds that each requirement is satisfied here:

a. First, the Court finds that Rule 23(a)(1) is met here, which requires that the proposed class be 'so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1)). "A finding of numerosity may be supported by common sense assumptions… ." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 239 (E.D.N.Y. 1998). Further, the Second Circuit has commented that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995). Here, direct notice was mailed to 696,094 Class Member mailing addresses. Moreover, since the members of the Classes included in the Settlement purchased Bayer's Combination Aspirins across the country, there can be no doubt that the number of class members far exceeds the threshold for satisfying the numerosity standard.

b. Next, the Court also finds the commonality requirement of Rule 23(a)(2) is met, which requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). The Court also finds that the typicality requirement of Rule 23(a)(3) is met, which requires that "the claims … of the representative parties are typical of the claims … of the class …" Fed. R. Civ. P. 23 (a)(3). "As a practical matter, the two requirements [of commonality and typicality] merge in the Second Circuit's inquiry." *Alleyne v. Time Moving & Storage, Inc.,* 264

F.R.D. 41, 48 (E.D.N.Y. 2010) (citing *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir. 1999)). Here, each of Class Plaintiffs' and the Class Members' claims arise from the same course of events, *i.e.* their purchase of Bayer's Combination Aspirins for which there is a common question: was there a false statement on the product?

      c.     Finally, adequacy examines whether the Class Plaintiffs and attorneys "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). The requirements of Rule 23(a)(4) are satisfied here. With this inquiry, the proposed Class Plaintiffs must "demonstrate that they have no interests that are antagonistic to the proposed class members" and class counsel must be qualified. *Myers v. Hertz Corp.,* No. 02 Civ. 4325 (BMC)(MLO), 2007 WL 2126264, at*6 (E.D.N.Y. July 24, 2007). Under the facts presented, Plaintiffs do not have any unique relationships with Defendant, do not have interests that are antagonistic to the Class' claims, and are fully aligned with the interests of other Class Members. In addition, each proposed Class Plaintiff has demonstrated their willingness and ability to take the required role in the litigation and to protect the interests of those they seek to represent. Class Plaintiffs' efforts are reflected in their respective consultations with counsel, preparing for and sitting for their depositions, responding to interrogatories, gathering documents and more. And, Class Counsel have fairly and adequately represented the interests of the Classes. The requirements of Rule 23(a)(4) are satisfied here.

4.     The Court also finds that the proposed Class meets the requirements of Rule 23(b)(3):

      a.     "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). This test is "readily met in certain cases alleging consumer or

securities fraud." *Id.* at 625.  In reviewing a settlement class certification, "the certifying court must…determine whether the 'the legal or factual questions that qualify each class member's case as a genuine controversy' are sufficiently similar as to yield a cohesive class," focusing its "analysis is on 'questions that preexist any settlement.'" *In re Am. Int'l Group, Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quoting *Amchem*, 521 U.S. at 623).  As previously discussed above as to commonality and typicality, all Class Members share a common legal grievance arising from Bayer's practice of selling Combination Aspirins that allegedly could not provide benefits over aspirin alone.  Common legal and factual questions are central to all Class Members' claims and predominate over any individual questions that may exist.  These include the questions of whether there were false statements on Bayer's products and/or whether Bayer violated state statutory and common laws when it allegedly misrepresented material facts on its products' labels.  Thus, "'[i]ssues of predominance and fairness do not undermine this settlement.  All plaintiffs here claim injury that by reason of defendants' conduct ... has caused a common and measurable form of economic damage.... All claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion.'" *In re Am. Int'l Group, Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quoting *Sullivan v. DB Investments*, 667 F.3d 273, 338 (3d Cir. 2011)).

    b.  Resolution of these common legal claims through a class-wide settlement and claims process is also a superior way to proceed.  Rule 23(b)(3) lists four factors for courts to consider in determining whether a class action is superior, and each of these factors supports a class-wide resolution.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D) ("(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the

4

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.").

        i.     First, Class Members have little interest in individually controlling separate lawsuits and settlement given the relatively small individual economic injuries involved, and those who do may choose to opt out of the Settlement.

        ii.     Second, it appears that no individual Class Members have chosen to commence litigation concerning this controversy except through class litigation, further suggesting that a collective action is indeed the superior method of recovery.

        iii.     Third, the Judicial Panel on Multidistrict Litigation has already determined that this Court is an appropriate forum in which to concentrate class members' claims.

        iv.     Fourth, there will be no difficulties in managing a class-wide trial, "for the proposal is that there be no trial." *Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997).

5.     The Court grants final approval to the Settlement, as amended, as being fair, reasonable and adequate (within the meaning of Fed. R. Civ. P. 23 or other applicable law) as to all Parties and consistent and in compliance with all requirements of due process and applicable law, as to and in the best interests of all Parties. The Court directs the Parties and their counsel to implement and consummate the Settlement Agreement, as amended, in accordance with its terms and provisions.

6.     Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). And, "[i]f the proposal would bind class members, the court may approve it only after a

hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The law strongly favors settlement. "Courts are wary of disturbing settlements, because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence." *Anita Foundations, Inc. v. ILGWU Nat. Ret. Fund,* 902 F.2d 185, 190 (2d Cir. 1990).

7. The law for evaluating the fairness of a class action settlement is well-established in this Circuit. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id*. (quoting *Grinnell*, 495 F.2d at 463). However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "'should consider the totality of these factors in light of the particular circumstances.'" *Id.* (quoting *Thompson v. Metro. Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y. 2003). The *Grinnell* factors favor final approval.

8. Upon a review of the *Grinnell* factors, this Court approves the Settlement, as amended, as fair, reasonable, and adequate:

a. The first factor requires the Court to consider "the complexity, expense and likely duration of the litigation." *Vitamin C,* 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). This litigation has been on file since 2008, pending before this Court since 2009, and involves complex legal and factual issues, with an added layer of complexity given that this case is a class action as opposed to ordinary litigation. The completed briefing on Plaintiffs' Motion for Class Certification, as well as Plaintiffs' motions to strike the reports offered by Defendant's experts in opposition to class certification, reflects this reality. Further, if the Court granted, in whole or in part, Plaintiffs' motion for class certification, an appeal under Rule 23(f) would inevitably have followed, requiring the Parties to incur additional time and expense re-litigating class certification issues. Additionally, if the Second Circuit reversed certification, an additional round of certification briefing may have taken place. And, if the litigation continued, additional time would have been implicated in preparing and opposing any motions for summary judgment. Depending on the scope of the Court's class certification order, additional, follow-up discovery efforts may have been required in order to finally prepare the case for the jury. Simply put, "[l]itigation through trial would be complex, expensive, and long." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *3 (E.D.N.Y. Nov. 20, 2012). The Settlement satisfies the first *Grinnell* factor.

b. With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *Vitamin C,* 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (citations omitted). This "significant" factor thus weighs heavily in favor of final approval. Here, the reaction of the Class Members to the Settlement has been

overwhelmingly positive. Even though the Notice informed Class Members that they could object to or exclude themselves from the Settlement, and explained how to object or opt-out, few chose to do so. In entering final approval, this Court has recognized that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Massiah*, 2012 WL 5874655, at *4 (citations omitted). Another indicia of reasonableness is exemplified in the fact that no recipients of mandatory notice of the proposed settlement in this manner under the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 et seq. ("CAFA Notice"), have objected. This second factor weighs in favor of final approval.

    c.  The third factor, "the stage of the proceedings and the amount of discovery completed," also calls for final approval. *Vitamin C,* 2012 WL 528 9514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "Extensive discovery ensures that the parties have had access to sufficient material to evaluate their case and to assess the adequacy of the settlement proposal in light of the strengths and weaknesses of their positions." *MetLife*, 689 F. Supp. 2d at 333-34 (citation omitted). Here, the record confirms the Parties' extensive investigation into the facts and law. They nearly completed full merits discovery, (1) producing and/or reviewing approximately 2.5 million pages of documents from Bayer and non-parties, (2) conducting and defending fifteen depositions of fact witnesses, (3) conducting and defending depositions of each of the four Class Representatives, and (4) conducting and defending depositions of nine former named Plaintiffs. And, Class Counsel fully briefed Plaintiffs' Motion for Class Certification, supported by an extensive Proffer of Facts. In addition, Class Plaintiffs' filed detailed motions to strike the reports and/or testimony of Bayer's expert witnesses. After years of heavy litigation, the Parties "have 'had sufficient information to act intelligently.'" *MetLife*, 689 F. Supp. 2d at

334 (quoting *In re PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y.1997)). This factor has been met.

        d.      "The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," i.e., the risks of establishing liability, damages and maintaining the class action through trial. *Vitamin C,* 2012 WL 5289514, at *4, 5 (citing *Grinnell*, 495 F.2d at 463). "Litigation inherently involves risks.*"* *Massiah*, 2012 WL 5874655, at *4 (quotation omitted). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id.* (quotation omitted). Undoubtedly, this case involved risks related to establishing, on a nationwide basis, that Bayer engaged in unfair, deceptive, or unlawful conduct in marketing the Combination Aspirin Products. Here, "[t]he risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval," particularly where "[a] motion to certify and/or decertify the class would likely require more extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing." *Id*. at *5. The Court's comments at the Preliminary Approval hearing further reflect the risks favoring settlement. While the Court found the Rule 23(a) factors were satisfied, the Court cited possible certification risks in connection with the predominance inquiry for certifying a litigation class under Rule 23(b)(3): "Predominance is a trickier question here. I thought the defendants really wrote an excellent brief in opposing class certification." Preliminary Approval Tr. at 43. Accordingly, the fourth, fifth, and sixth *Grinnell* factors weigh in favor of the Settlement.

        e.      Regarding the seventh factor, the Court considers Bayer's ability "to withstand a greater judgment." *Vitamin C*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). This factor is not at issue here.

f. With the last two *Grinnell* factors, courts look to "the range of reasonableness of the settlement fund in light of the best possible recovery" as well as "the range of reasonableness of the settlement fund in light of all the attendant risks of litigation." *Id*. However, "[t]he determination of a reasonable settlement is not susceptible of a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness." *MetLife*, 689 F. Supp. 2d at 340 (citing *PaineWebber,* 171 F.R.D. at 130) (internal quotations omitted). "This range of reasonableness recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (citing *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.1972)) (internal quotations omitted). Thus, there "is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id,* (quoting *Grinnell,* 495 F.2d at 455 n. 2). Here, the Settlement provides reasonable monetary relief and substantially fulfills the purposes and objectives of this class action. Plaintiffs have obtained a $15 million recovery. The recovery represents significant percentages of recovery: (1) between 9.63% and 87.14% of the damages alleged for Bayer Women's Class Members, and (2) between 13.05% and 83.51% of the damages alleged for Bayer Heart Advantage Class Members. Courts in the Second Circuit "often approve class settlements even where the benefits represent only a fraction of the potential recovery," ranging from 1.6% to 12% of claimed damages. *Velez v. Novartis Pharms. Corp*., 2010 U.S. Dist. LEXIS 125945, *40-41 (S.D.N.Y. Nov. 30, 2010). Thus, taking into account the risks of continued litigation, and the fact that the Settlement was reached after intensive, the result of the settlement, and the fact of arm's-length negotiations conducted by experienced counsel, the eighth and ninth *Grinnell* factors favor final approval.

9. The Court also approves the proposed Plan of Allocation, as revised by the Amendment. Generally, the Plan of Allocation provides for the distribution of the Net Settlement Fund after payment of required expenses and payments due from any Fee and Expense Reward. Each Class Member is eligible for payment based on his or her purchases during the relevant time period. And, Class Members can be members of both Classes. The Plan of Allocation allocates 60% to the "Bayer Women's Low-Dose Aspirin + Calcium" Class, and 40% to the "Bayer Aspirin With Heart Advantage" Class.

10. "'As a general rule, the adequacy of an allocation plan turns on…whether the proposed apportionment is fair and reasonable under the particular circumstances of the case.'" *Vitamin C,* 2012 WL 5289514, at *7 (quoting *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003)). "'An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Id.* (quoting *In re Am. Bank Note Holographies, Inc.,* 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)). "As numerous courts have held, a plan of allocation need not be perfect." *In re EVCI Career Colls. Holding Corp. Sec. Litig.,* 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007). Here, the Settlement provides monetary benefits to two settlement classes, the "Bayer Women's Low-Dose Aspirin + Calcium" Class and the "Bayer Aspirin With Heart Advantage" Class. The proposed allocation is derived as the result of informed, arm's length negotiations conducted by separately appointed Allocation Counsel. *See* Settlement, §§ II(B), III(E)(1). The record reveals that each counsel, experienced in complex actions like this case, conducted arm's length negotiations over the course of a month, arriving at the 60%/40% allocation values.

11. The Court also finds that the Amendment is fair, adequate and reasonable because it addresses the low rate of claims received to date and increases Class Member participation in the Settlement.

12. Each Authorized Claimant who files a valid, sworn and timely Claim Form identifying (i) the products(s) purchased; the approximate date of such purchase(s); and (iii) the location of such purchase(s), and who submits documents that the Claims Administrator determines are valid proof(s) of purchase, shall be entitled to payment from the Settlement Class Amounts for $4.00 for each purchase of "Bayer Women's Low Dose Aspirin + Calcium" and/or $6.00 for each purchase of "Bayer Aspirin With Heart Advantage," subject to any pro rata reductions. In addition, each Authorized Claimant for which the Claims Administrator or its designee has Purchase Records shall be entitled to payment from the Settlement Class Amounts for $4.00 for each purchase of "Bayer Women's Low Dose Aspirin + Calcium" and/or $6.00 for each purchase of "Bayer Aspirin With Heart Advantage," subject to any pro rata reductions. And, if an Authorized Claimant submits a valid, sworn and timely Claim Form, including a written attestation that identifies (i) the products(s) purchased; the approximate date of such purchase(s); and (iii) the location of such purchase(s), but does not submit valid proof of purchase and the Claims Administrator or its designee does not have Purchase Records for the Claimant, he or she shall be entitled to a one-time payment of $4.00 for all purchases of "Bayer Women's Low Dose Aspirin + Calcium" and/or a one-time payment of $6.00 for all purchases of "Bayer Aspirin With Heart Advantage," subject to any pro rata reductions.

13. The Court also finds that if there are any Excess Amounts remaining after all payments contemplated by the Settlement, as amended, and ordered by the Court have been made ("Final Excess Amount"), the Final Excess Amount shall be distributed *cy pres* as follows:

fifty (50) percent of the Final Excess Amount shall be distributed in a *cy pres* payment to the National Osteoporosis Foundation and fifty (50) percent of the Final Excess Amount shall be distributed in a *cy pres* payment to the American Heart Association. The Court further determines that the selection of each organization to receive any unclaimed funds, with their missions nationwide in scope, will ensure that the distribution of remaining money from the Settlement Amount will "will go to organizations devoting resources to issues that are closely related to the interests of the members of [the Classes]." *In re Visa Check/MasterMoney Antitrust Litig.*, 2011 WL 5029841, at *9 (E.D.N.Y. Oct. 24, 2011).

14. The Settlement Agreement, as amended, and this Final Order and Judgment are binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release (as set forth in Section VI of the Settlement) maintained by or on behalf of the Class Plaintiffs and all other Settlement Class Members, as well as their successors, heirs, executors, trustees, administrators, and assigns.

15. The Settlement Class Notice Program implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order: (i) constituted the best practicable notice, (ii) constituted notice that was reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Litigation, of their right to object to or exclude themselves from the proposed Settlement, of their right to appear at the Fairness Hearing and of their right to seek monetary and other relief, (iii) constituted reasonable, due, adequate and sufficient notice to all persons entitled to receive notice, and (iv) met all applicable requirements of due process and any other applicable law. Supplemental notice is not required because the Settlement Agreement, as amended, does not provide for any material changes to Settlement;

rather the Settlement Agreement, as amended, serves to increase class member participation in the Settlement.

16. The Court approves the Claim Form that was distributed to Settlement Class Members, the content of which was without material alteration from Exhibit F to the Settlement Agreement.

17. The Court finds that Class Counsel and the Class Plaintiffs adequately represented the Settlement Class for purposes of entering into and implementing the Settlement and Agreement, as amended.

18. The Class Plaintiffs and the Settlement Classes have conclusively compromised, settled, dismissed and released any and all Released Claims against Defendants and the Released Persons.

19. Without affecting the finality of this Final Order and Judgment for purposes of appeal, the Court reserves jurisdiction over the Claims Administrator, Defendant, the Class Plaintiffs and the Settlement Classes as to all matters relating to the administration, consummation, enforcement and interpretation of the terms of the Settlement, as amended, and Final Order and Judgment, and for any other necessary purposes.

20. Upon the Effective Date, the Class Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Classes, whether or not they return a Claim Form within the time and in the manner provided for, shall be barred from asserting any Released Claims against Defendants and/or any Releasees, and any such Settlement Class Members shall have released any and all Released Claims as against Defendants and all Released Persons.

21. This Final Judgment and Order bars and permanently enjoins all Settlement Class Members who have not been properly excluded from the Settlement Classes from any and all claims that were or could have been asserted by the Class Releasors arising from or related to Bayer Heart Advantage and Bayer Women's including, but not limited to, any and all claims, causes of action, demands, actions, suits, rights, obligations, controversies or the like, known or unknown, including, but not limited to, understate consumer fraud, warranty, or unjust enrichment law (the "Released Claims"). Released Claims shall not include claims for personal injury. Released Claims are subject to the Reservation of Claims and Rights as described in Section VI.B in the Settlement.

22. The Court approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Classes and, accordingly, shall neither share in nor be bound by the Final Order and judgment except for Opt-Outs who subsequently elect to submit Claim Forms during the Claim Period.

23. The Parties, without further approval from the Court, are authorized to agree to and adopt such amendments, modifications and expansions of the Settlement , as amended, and all Exhibits thereto as (i) shall be consistent in all material respects with the Final Order and Judgment and (ii) do not limit the rights of the Parties or Settlement Class Members.

24. Pursuant to Fed. R. Civ. P. 54(b), the Court expressly determines that there is no just reason for delay and directs that separate judgments with respect to all claims by Settlement Class Members of the Bayer Heart Advantage Class and the Bayer Women's Low Dose Aspirin + Calcium Class are deemed as final judgments.

25. The Court dismisses this lawsuit, *In re: Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation,* 09-MD-2023 (MBC)(JMA) (E.D.N.Y.), and all of the underlying suits transferred to the Court by the Judicial Panel on Multidistrict Litigation and all individual and class claims presented thereby, on the merits and with prejudice and without fees or costs except as provided herein or any other Order entered by the Court, in accordance with the terms of this Final Order and Judgment.

IT IS SO ORDERED

Dated: April 11, 2013

By: _____
Hon. Brian M. Cogan
UNITED STATES DISTRICT JUDGE