Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
1144 W. Lake Street, Suite 400
Oak Park, IL  60301
Telephone:  (708) 628-4960

*Co-Lead Counsel for Plaintiffs*

Michael A. London
Douglas & London, P.C.
111 John Street, 14th Floor
New York, NY  10038
Telephone:  (212) 566-7500

*Co-Lead and Liaison Counsel for Plaintiffs*


**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:  BAYER CORP. COMBINATION ASPIRIN PRODUCTS MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS PLEADING RELATES TO:<br><br>ALL CASES | 09-md-2023 (BMC)(JMA)<br><br>**COGAN**, District Judge |


**[CORRECTED] PLAINTIFFS' RESPONSE TO SUPPLEMENTAL OBJECTION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES BY OBJECTOR THEODORE FRANK**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................1

II.    ARGUMENT..................................................................................................1

      A.     The Record is Clear: Throughout Negotiations in  2011-12, Plaintiffs
            Demanded – and Bayer Rejected – Direct Distributions to Class Members
            Until February 2013...............................................................................1

      B.     This Court, Like Others, Has Recognized 30% Fee Awards As "Reasonable
            and Consistent With The Norms of Class Litigation In This Circuit"....................4

III.   CONCLUSION..............................................................................................8

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Amaranth Natural Gas Commodities Litig.,*
   2012 WL 2149094 (S.D.N.Y. June 11, 2012) ...........................................................5

*Colabufo v. Cont'l Cas. Co.,*
   2009 WL 8626041 (E.D.N.Y. July 31, 2009)...........................................................5

*Farinella v. PayPal, Inc.,*
   611 F. Supp. 2d 250 (E.D.N.Y. 2009) .....................................................................7

*Fears v. Wilhelmina Model Agency,*
   2009 U.S. Dist. LEXIS 85252 (S.D.N.Y. Sept. 15, 2009)...............................5, 6, 7

*Goldberger v. Integrated Resources, Inc.,*
   209 F.3d 43 (2d Cir. 2000)..............................................................................4, 5, 7

*Massiah v. MetroPlus Health Plan, Inc.,*
   2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)..................................................3, 4, 5

*Masters v. Wilhelmina Model Agency, Inc.,*
   473 F.3d 423 (2d Cir. 2007)......................................................................................3

*Park v. The Thomson Corp.,*
   2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ........................................................6, 7

*In re Sadia S.A. Sec. Litig.,*
   2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ...........................................................5

*Sewell v. Bovis Lend Lease, Inc.,*
   2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)............................................................5

## I.      INTRODUCTION

This Court well knows the extensive efforts invested by Plaintiffs' Counsel in prosecuting this matter through, inter alia, nearly full merits discovery, a fully-briefed Motion for Class Certification, and five Motions to Strike expert declarations.  Nonetheless, at the Fairness Hearing, the Court inquired why Plaintiffs did not propose direct distributions to known Settlement Class Members prior to their Motion to Amend Plan of Distribution.  As Class Counsel expressed then, Plaintiffs demanded direct distributions multiple times; after Bayer rejected multiple times, Class Counsel had to decide whether to compromise on a claims-made $15 million common fund.  Ultimately, in our best judgment, we believed it would not be prudent to walk away from a true win for the Classes.  That being said, the record reflects that ultimately Class Counsel achieved approval of a Settlement that includes direct distributions. The fact that it took Bayer several years to agree to the right result should be not be a reason to penalize Plaintiffs' Counsel as objector Frank suggests.  Accordingly, Plaintiffs respectfully request approval of their Motion for Attorneys' Fees and Expenses and Service Awards.

## II.      ARGUMENT

### A.      The Record is Clear: Throughout Negotiations in 2011-12, Plaintiffs Demanded – and Bayer Rejected – Direct Distributions to Class Members Until February 2013.

Frank suggests that Class Counsel failed to propose direct distributions to class members until the objectors raised the issue.[1]  This is simply not accurate.  Plaintiffs *repeatedly* demanded direct distributions.  Indeed, even in their initial settlement meeting with defense counsel in March 2011, as reflected in a PowerPoint presentation they made, Plaintiffs conveyed this

---

[1] Frank also suggests that Class Counsel have made dissent "unnecessarily difficult."  Frank Supp. Obj. at 5.  However, Frank's extensive ECF entries reflect a process that has readily provided him with four opportunities to voice his dissent, including an initial objection (Dkt. # 206), a Notice of Decision (Dkt. # 214), a Second Objection (Dkt. # 225), and a Supplemental Objection on Fees (Dkt. # 231).

position to the defense.[2]  Declaration of Elizabeth A. Fegan in Support of Plaintiffs Response to

Supplemental Objection ("Fegan Decl."), ¶ 2.  As settlement negotiations continued, Plaintiffs'

counsel demanded direct distributions in letters to defense counsel or mediator Antonio Piazza

(on which defense counsel was copied) dated June 16, 2011, October 5, 2011, and December 13,

2011.  *Id.* ¶ 3.  Moreover, Plaintiffs demanded direct distributions to known class members at

both mediations, including in both Mediation Statements submitted to Mr. Piazza and the

Honorable Edward A. Infante (Ret.).  *Id.* ¶ 4.  Ultimately, after protracted negotiations and failed

mediations, Judge Infante recommended that Plaintiffs settle the $15 million common fund on a

claims-made basis because the parties reached the extent of what Bayer would agree to before a

class certification decision.[3]  *Id.* ¶ 5.  Plaintiffs' counsel believed that this was the best decision

when faced with the risks of the litigation generally.  *Id.* ¶ 6.

While Frank also suggests that an award should be reduced because objectors brought the

*In re Baby Products* decision to the Court's attention on February 21, 2013, counsel for Plaintiffs

promptly worked toward revising the settlement and obtaining an agreement from Bayer for

direct distributions as soon as the decision came out.  *Id.* ¶ 7.  Specifically, Elizabeth Fegan was

well aware of the Third Circuit's decision in *In re Baby Products Antitrust Litigation* (E.D. Pa.)

as Class Counsel in that case.  *Id.* ¶ 8.  Thus, on the morning of February 19, 2013, Ms. Fegan

received a copy of the decision by ECF after it was filed by the Third Circuit.  *Id.*  Armed with

that decision, during the afternoon of February 19, 2013, counsel for Plaintiffs met and conferred

with defense counsel regarding the need to amend the settlement to include direct distributions in

---

[2] At the Court's request, Plaintiffs can produce copies of the settlement related communications referenced for *in camera* inspection.

[3] As this Court's statement at preliminary approval confirms, the risks associated with waiting until a decision on class certification in order to settle the matter were great.  Preliminary Approval Tr. at 43:23-25 ("I thought the defendants really wrote an excellent brief in opposing class certification.  But I ultimately do believe that even though there may be members of this class that would not have claims, at least not direct claims, but for this action.").

this case.  *Id.* ¶ 9.  During the call, Plaintiffs explained their view that the parties needed to

amend the settlement and asked Bayer to reconsider its earlier refusals to agree to direct

distributions.  *Id.*  Bayer subsequently agreed and the parties amended the settlement approved

by the Court.  Thus, Frank's suggestion that any fee award be limited to 20% of the settlement

fund should be rejected.

Moreover, as Plaintiffs' opening fee petition details, Plaintiffs have invested 20,734 hours

in this case and their request for 30% of the fund reflects an average hourly rate of $217 per

hour, well below even the lower range of rates paid for associates in complex cases in this

district.  Frank's suggestion, if approved, would depress this compensation to an average hourly

rate of $144 per hour.  The fact that Defendant refused to agree to direct distributions until an

appellate court ruled on the issue is no reason to punish Class Counsel who have done an

undeniably great job here for the Classes.  Their efforts resulted in the creation of a $15,000,000

common fund that the Court approved as both procedurally and substantively fair.  *See generally*

*Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund,

and not some portion thereof, is created through the efforts of counsel at the instigation of the

entire class. An allocation of fees by percentage should therefore be awarded on the basis of the

total funds made available, whether claimed or not.").

Finally, there can be no dispute that "Class Counsel risked time and effort and advanced

costs and expenses, with no ultimate guarantee of compensation." *Massiah v. MetroPlus Health*

*Plan, Inc.,* No. 11-CV-05669 BMC, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).

Similarly, it cannot be disputed that "Class Counsel's fee award will not only compensate them

for time and effort already expended, but for time that they will be required to spend

administering the settlement going forward also supports their fee request." *Id.*  And, "[w]here

relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys

general' play an important role." *Id*. at *7 (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S.

326, 338-39 (1980)).  As a result, "[a]ttorneys who fill the private attorney general role must be

adequately compensated for their efforts," otherwise the public risks an absence of a "remedy

because attorneys would be unwilling to take on the risk." *Id*. (quoting *Goldberger v. Integrated

Resources, Inc.*, 209 F.3d 43, 51 (2d Cir. 2000), for its commendation of the "general 'sentiment

in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the

public interest'").  To compress Plaintiffs' fee award to 20% would have a chilling effect on such

factors.  Accordingly, while Plaintiffs agree with Frank that Plaintiffs should be awarded a fee in

this case, they strenuously opposed and disagree that the fee should be set at 20%.

**B.     This Court, Like Others, Has Recognized 30% Fee Awards As "Reasonable and Consistent With The Norms of Class Litigation In This Circuit"**

Frank objects to Plaintiffs' request for a 30% award of the settlement fund, suggesting

that such a percentage "is unequivocally ambitious," attempting to paint Plaintiffs' fee request as

unusual or outside the norm of awards authorized in this Circuit.  Frank Supp. Obj. at 2.

However, recent decisions by this Court and others recognize 30% fee awards as reasonable.  In

*Massiah*, 2012 WL 5874655, at *1,[4] this Court collected cases in which class counsel were

awarded 33% of the settlement fund, a percentage larger than that requested here.  In doing so,

the Court approved a 30% fee award:

> Class Counsel's request for thirty percent of the fund is reasonable
> and consistent with the norms of class litigation in this circuit.
> Courts in this Circuit have routinely granted requests for one-third
> or more of the fund in cases with settlement funds similar to or
> substantially larger than this one.  A fee of 30% of the fund is
> reasonable and consistent with the norms of class litigation in this
> circuit.

---

[4] Frank cited to the *Massiah* decision in suggesting that the fee here be limited to 20%.  *See* Frank Supp. Obj. at 5.

2012 WL 5874655, at *7 (internal citations and quotations omitted).  This language reflects the

practice in this Circuit, both as reached by this Court as far back as 2009 as well as other recent

cases from other courts.  *See, e.g., Colabufo v. Cont'l Cas. Co.,* No. 04-CV-1863 BMC MLO,

2009 WL 8626041, at *4 (E.D.N.Y. July 31, 2009) (Cogan, J.) (granting final approval in class

action settlement, awarding "reasonable attorneys' fees in the amount of one-third (1/3rd) of the

Net Settlement Payment (minus applicable hold-backs to Defendants), in accordance with the

terms of the Settlement Agreement"); *In re Amaranth Natural Gas Commodities Litig.,* No. 07

Civ. 6377 (SAS), 2012 WL 2149094, at *2 (S.D.N.Y. June 11, 2012) (awarding attorneys' fees

in settling class action of 30% of $77.1 million settlement, which represented a multiplier of

0.92, as "reasonable after assessing the *Goldberger* factors" where "the time and labor expended

by plaintiffs' counsel support a thirty-percent fee.  Plaintiffs' counsel have invested

approximately 49,113 hours in these actions."); *Sewell v. Bovis Lend Lease, Inc.,* No. 09 Civ.

6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) (granting fee award of one-third of the

total settlement payment of $2,350,000, or $843,340, where the proposed award equals the

lodestar amount increased by a multiplier of 2.93); *In re Sadia S.A. Sec. Litig.,* No. 08 Civ. 9528

(SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) (awarding $8.1 million dollar fee which

reflected 30% of settlement fund as "reasonable" where plaintiffs' counsel invested

approximately 20,530 hours).

     In arguing for a lower fee award, Frank relies heavily on the decision in *Fears v.*

*Wilhelmina Model Agency*, 2009 U.S. Dist. LEXIS 85252 (S.D.N.Y. Sept. 15, 2009)*,* which he

characterizes as "most instructive" as that settlement awarded a 20% fee and involved indirect

benefits to class members through the use of a *cy pres* fund.  However, in *Fears*, the plaintiffs

sought a fee award that wiped out the indirect benefit provided to class members by *cy pres*, a situation that is not before this Court.  As the *Fears* court noted:

> Because the additional fee distribution they seek exceeds the balance remaining in the Settlement Fund, Plaintiffs' Counsel request that I distribute to them the entire remaining balance of the fund…. Although the requested fee of 33% of the fund is itself a fraction of Counsel's claimed lodestar, such a fee award would eliminate any *cy pres* distribution and thereby eliminate the indirect benefits conferred upon the class.

*Id.* at *21, 38-39.  Though Frank's latest brief reads as if the *Fears* court awarded a 20% fee because a 33% award would be at the "high end of the spectrum," *see* Frank Supp. Obj. at 3, it did so in order to preserve the indirect benefits in that case that would otherwise be wiped out by an attorney fee award far in excess of that sought here.  The court explained:

> Plaintiffs' Counsel's eight-digit lodestar is so large that any fee award in excess of the 20%-of-fund fee that I find reasonable will 'swallow up' all the indirect benefits conferred upon the Plaintiffs' Class by the *cy pres* allocation…. I took great pains to identify charitable organizations … and I previously found such an allocation of Residual Funds to be the 'next best compensation use for the indirect benefit of the class.'

2009 U.S. Dist. LEXIS 85252, at *27.  In stark contrast, Plaintiffs' fee request here will not eliminate the indirect benefits conferred upon the class, but Plaintiffs' estimate approximately $2.4 million will serve to benefit the class through the work of the *cy pres* designees American Heart Association and the National Osteoporosis Foundation.  This occurs even after direct payments to class members and payment of Plaintiffs' requested 30% fee.

Frank also relies on other cases with facts not before the Court.  While Frank points to *Park v. The Thompson Corp.* for its approval of a 15.6% fee as reasonable over the 24.1% requested by the plaintiffs there, *see* Frank Obj. at 2, the court awarded a multiplier, though not one as high as the plaintiffs' requested.  *See Park v. The Thomson Corp.*, No. 05 Civ. 2931

(WHP), 2008 WL 4684232, at \*7 (S.D.N.Y. Oct. 22, 2008) ("Applying the *Goldberger* factors, this Court concludes that a total attorneys' fee of $2,031,774 is reasonable and appropriate. That fee applies a 1.5 multiplier to the lodestar of $1,354,516 and yields a recovery of approximately 15.6% of the Fund."). By contrast here, Plaintiffs' fee request reflects a negative multiplier.

And, in attempting to garner support, Frank relies on *Farinella v. PayPal, Inc.,* 611 F. Supp. 2d 250, 272 (E.D.N.Y. 2009), *see* Frank Obj. at 2, which declined to award the requested 28% fee request, awarding 20% instead. Like with *Fears* and *Park*, the facts before the *Farinella* court do not justify extrapolating that decision to the facts before this Court. Specifically, the *Farinella* court found that case to be of "questionable merit" and reduced the fee award in two steps. As the *Farinella* court explained its logic:

> In consideration of the fact that fees of 3% of the Settlement Fund, or $105,000, were requested for work made necessary only due to the flaws of the first settlement agreement brought before this Court, the Court begins by reducing the requested fees by such amount to 25% of the Settlement Fund, or $875,000. In consideration of the substantial amount of time that was devoted to largely unrelated claims and claims for which counsel otherwise received compensation, the Court further reduces the fee requested to 20% of the Settlement Fund, or $700,000.

*Id.* at 273. By contrast, and extremely important to highlight, Plaintiffs' fee request here does *not* include a request for "work made necessary only due to the flaws of the first settlement agreement," nor have Plaintiffs received compensation for litigating "unrelated claims and claims for which counsel otherwise received compensation." Plaintiffs' request for fees has remained at 30% of the Settlement fund since they filed their request on January 22, 2013, even though the time and effort they incur in this case is growing. Thus, the facts of *Farinella, Park,* and *Fears* do not fit with those before the Court.

This is not a case where Class Counsel seek a multiplier, let alone a windfall award, which would wipe out indirect relief to class members. Nor is this a case of "questionable merit" where counsel has already been paid. Rather, they seek partial compensation for the thousands of hours that they have invested in bringing this case to settlement, hours incurred in conducting extensive discovery, building a thorough factual work-up, and researching and fully briefing their motion for class certification. As this Court noted, class members "are getting a recovery they wouldn't otherwise get but for [Class Counsel's] hard work." Preliminary Approval Tr. at 17:10-20. For these reasons and more, a 30% award is reasonable and should be approved.

### III.     CONCLUSION

Accordingly, for the reasons provided above, in prior briefing, and as stated during the fairness hearing held in this case on April 8, 2013, Plaintiffs respectfully reassert their request that the Court grant their Motion for Attorneys' Fees and Expenses, and Service Awards, approve an attorneys' fee award of 30%, plus out-of-pocket expenses in the amount of $600,000, as just and reasonable compensation for the extensive, hard-fought efforts counsel undertook with no guarantee of payment. And, they request approval of a $2,500.00 Incentive Award to each Named Plaintiff in recognition of their valuable services to the Classes. Plaintiffs further request all such other relief the Court deems necessary and appropriate.

8

Dated:  April 12, 2013

Respectfully submitted,

By: /s/ Elizabeth A. Fegan
    Elizabeth A. Fegan
    Daniel J. Kurowski
Hagens Berman Sobol Shapiro LLP
1144 W. Lake Street, Suite 400
Oak Park, IL  60301
Telephone:  (708) 628-4960
Facsimile: (708) 628-4950
Email: beth@hbsslaw.com
E-mail: dank@hbsslaw.com

Steve W. Berman
Ivy Arai Tabbara
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 91810
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
    ivy@hbsslaw.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ Michael A. London
Michael A. London
Virginia Anello
Douglas & London, P.C.
111 John Street, 14th Floor
New York, NY  10038
Telephone:  (212) 566-7500
Facsimile: (212) 566-7501
Email: mlondon@douglasandlondon.com
Email: vanello@douglasandlondon.com

*Co-Lead and Liaison Counsel for Plaintiffs*

9

Andres F. Alonso
Alonso Krangle LLP
445 Broad Hollow Road, Suite 205
Melville, NY 11747
Telephone: (516) 350-5555

Jerrold S. Parker
Parker Waichman LLP
111 Great Neck Road, 1st Floor
Great Neck, NY 11021
Telephone: (516) 466-6500

D. Greg Blankinship
Meiselman, Packman, Nealon,
Scialabba & Baker P.C.
1311 Mamaroneck Avenue
White Plains, NY 10605
Telephone: (914) 517-5000

Daniel E. Becnel, Jr.
Becnel Law Offices
106 W 7th Street
Reserve, LA 70084
Telephone: (985) 536-1186

James G. Onder
Mark R. Niemeyer
Onder, Shelton, O'Leary & Peterson, LLC
110 East Lockwood
St. Louis, MO 63119
Telephone: (314) 963-9000

W. Lew Garrison
Gayle Douglas
William L. Bross, IV
Heninger Garrison Davis
2224 1st Avenue North
Birmingham, AL 35203
Telephone: (205) 326-3336

Daniel J. Mogin
The Mogin Law Firm P.C.
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone: (619) 687-6611

Scott W. Weinstein
Morgan & Morgan, P.A.
12800 University Drive, Suite 600
Fort Myers, FL 33907
Telephone: (239) 433-6880

J. Barton Goplerud
Hudson Mallaney Shindler & Anderson, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567

Daniel K. Touhy
Terrence Buehler
Touhy, Touhy, Buehler & Williams LLP
55 West Wacker, Suite 1400
Chicago, IL 60601
Telephone: (312) 372-2209

David J. Cohen, Esq.
Kolman Ely, P.C.
414 Hulmeville Avenue
Penndel, PA 19147
Telephone: (215) 750-3134

Matthew J. Herman
Robert Foote
Stephen William Fung
Kathleen Chavez
Foote, Mielke Chavez & O'Neil
10 W. State Street, Suite 200
Geneva, IL 60134
Telephone: (630) 232-7450

*Additional counsel for Plaintiffs and the putative classes*

11