UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
                                                          :
                                                          :
IN RE: BAYER CORP. COMBINATION         :  **MEMORANDUM,**
ASPIRIN PRODUCTS MARKETING AND         :  **DECISION AND ORDER**
SALES PRACTICES LITIGATION             :
                                                          :  09-md-2023 (BMC)
                                                          :
                                                          :
----------------------------------------------------------X

**COGAN**, District Judge.

By Order dated April 11, 2013, the Court granted final approval of the class action settlement in this case ("Settlement Agreement"), and dismissed the lawsuit. Following entry of this Order, objectors Shelly Stevens and Janis Johnson filed their Notice of Appeal of the Settlement Agreement. Before the Court is plaintiffs' motion [242] for an appeal bond in the amount of $132,500.00. Objectors Stevens, Johnson, and Theodore Frank[1] have opposed the motion. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part, and objectors Stevens and Johnson are ORDERED to post bond in the amount of $55,000 with the Clerk of the Court.

## DISCUSSION

**I. Appropriateness of a Bond**

Federal Rule of Appellate Procedure 7 provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. This provides protection to an appellee against the risk of nonpayment by an unsuccessful appellant. See Adsani v. Miller, 139 F.3d 67 (2d Cir.1998)). In determining whether an appeal bond is appropriate, district courts

---

[1] Objector Frank is not an appellant in this case and therefore lacks standing to challenge plaintiffs' motion for an appeal bond. The Court shall not consider Objector Frank's arguments in opposition to plaintiffs' motion.

consider the following factors: "(1) the financial ability of the appellants to post the bond; (2) the risk of the appellants' non-payment if the appeal is unsuccessful; (3) the merits of the appeal; and (4) whether the appellants have shown any bad faith or vexatious conduct." See Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq., No. 09–CV–890, 2011 WL 917519, at *1 (E.D.N.Y. Mar. 9, 2011) (citation omitted).

Plaintiffs argue that consideration of all four factors weigh in favor of granting their motion for an appeal bond. First, they note that neither objector has demonstrated an inability to post the bond. I agree. Having provided no financial information, the objectors have conceded this issue and have the financial ability to post a bond.

Second, plaintiffs contend that the risk of the objectors' nonpayment of costs if the appeal is unsuccessful is significant because there is nothing guaranteeing the objectors' payment of costs. In addition, since the objectors and their counsel are located in Texas, while plaintiffs' lead-counsel is in New York and Illinois, collecting any costs from the objectors will pose a difficulty. Again, the objectors failed to address this factor and the Court thus finds that they have conceded the issue and that there is indeed a risk of nonpayment.

Third, plaintiffs argue that the appeal is meritless because (1) the objectors appeal an order that does not exist; (2) they appeal an order which they had forfeited and/or waived their right to appeal; (3) plaintiffs have demonstrated that the class meets the certification requirements outline in Rule 23 of the Federal Rules of Civil Procedure; and (4) the issues in the Settlement Agreement have been extensively litigated and the Court has already concluded in approving the settlement that the terms were fair, reasonable, and adequate. While objector Stevens argues that the appeal as to attorney's fees is not meritless or frivolous, as evidenced by the fact that there is wide disagreement in federal jurisprudence on the issue of attorney's fees.

That is a non-sequitur. I haven't yet entered an Order approving attorneys' fees, so I don't see how Stevens could have a meritorious appeal. I therefore agree with plaintiffs that the objectors' lack of awareness as to whether attorney's fees had even been granted demonstrates that their appeal, at least in part, is without merit. Furthermore, given the fact that the Court reached its conclusion that the Settlement Agreement is fair, adequate and reasonable, after extensive evaluation of all aspects of the Settlement Agreement, the Court finds that the appeal is likely without merit.

Finally, as to whether the objectors have shown any bad faith or vexatious conduct, plaintiffs argue that the objectors are professional objectors quite familiar with filing objections and/or appeals to class action settlements and that they therefore are contesting the Settlement Agreement in bad faith. See In re Initial Public Offering Securities Litigation, 728 F. Supp. 2d 289 (S.D.N.Y. 2010). In addition, they argue that objectors Stevens and Johnson did not contribute to the final approval deliberations or attend the fairness hearing, which confirms that the objectors seek simply to delay the distribution of settlement funds in the hopes of obtaining a share of the settlement. Plaintiffs further argue that the fact that the objectors are appealing an alleged order granting plaintiffs' motion for attorney's fees and expenses and service awards, even though this Court has not yet ruled on the motion, calls into question the good faith nature of their actions.

While the Court recognizes the fact that the appellants are professional objectors who have a history of involvement in class action settlements, that fact alone is not indicia of bad faith or vexatious conduct on their part. Nor is it relevant to the bad faith inquiry that the appellants failed to attend the fairness hearing; attendance at the fairness hearing, while probative of objectors' interest in the outcome of the settlement, was certainly not mandatory. The

objectors did not waive their right to appeal the Settlement Agreement by failing to attend the fairness hearing. The Court does, however, find it troubling and indicative of a lack of good faith that the objectors are appealing a non-existent order granting plaintiffs' motion for attorney's fees. This does call into question whether the objectors have simply launched yet another routine appeal, or whether they are genuinely interested in and committed to securing a better settlement for plaintiffs.

Having considered all of these factors, the Court concludes that an appeal bond would be appropriate in this case. The Court must next determine whether the amount sought by plaintiffs is appropriate.

**II. Amount of the Bond**

"The Second Circuit has held that 'costs on appeal' may include the definition of 'costs' contained in the relevant substantive statute under which appeal is sought and are not limited by the enumeration of some 'costs' found in Rule 39." In re Air Cargo Shipping Servs. Antitrust Litig, No. 06-MD-1775, 2010 WL 1049269, at *2 (E.D.N.Y March 22, 2010) (citing Adsani v. Miller, 139 F.3d 67, 75 n. 9 (2d Cir.1998)). Thus, beyond taxable costs of appeal, which are provided by Fed R. App. P. 39, other costs, such as attorney's fees and delay costs, may only be included if provided for by the underlying statute.

Plaintiffs request a bond in the amount of $132,500.00, which includes: (1) $25,000.00 in taxable costs for photocopying, printing, binding, filing, service, preparation and transmission of the record, and fees for filing the notice of appeal; (2) $50,000.00 in attorney's fees; and (3) $57,500.00 to cover communication and administrative costs they will incur in dealing with the class members during the appeal period.

1. $25,000 in taxable costs under Rule 39

Plaintiffs do not explain how they arrive at the amount of $25,000.00 for taxable costs on appeal. Rather, they cite several district court cases in which courts have allowed bond amounts in excess of $25,000 to cover printing and copying costs. In <u>In re Initial Public Offering Securities Litigation</u>, 728 F. Supp. 2d 289 (S.D.N.Y. 2010), for example, the court held that $25,000 was a proper amount to cover taxable costs under Rule 39 where plaintiffs would need to produce thousands of pages of expert reports and exhibits, which, taxed at the Second Circuit rate of $0.20 per page, would entail tens of thousands of dollars in costs.

The objectors contend that $25,000 is an excessive amount, and that the actual Rule 39 costs plaintiffs will incur will not exceed $2,000. Neither objector provides any explanation as to how they arrived at that figure; objector Stevens argues that because plaintiffs have themselves not provided a breakdown of their amount, they have forfeited their right to project costs.

In <u>Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.</u>, No. 09–CV–890, 2011 WL 917519, at *4-5 (E.D.N.Y. March 9, 2011), the Court held that $25,000 "plainly exceeds any reasonable expectation" of Rule 39 costs and that $5,000 would be sufficient to cover any such costs. In so holding, the Court noted that appellees had failed to specify a basis for their calculations. The Court further distinguished the case from <u>In re Initial Public Offering Securities Litigation</u>, noting that while that case involved "309 consolidated actions, fifty-five investment banks, thousands of individual defendants, and more than seven million potential class members," the case before the Court only involved two plaintiffs, five individual or groups of defendants, and seventeen causes of action. See 2011 WL 917519 at *4; <u>see also</u> Curtis &

5

Associates, P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 157-66 (E.D.N.Y. 2010).

The Court finds that plaintiffs' request of $25,000 is excessive. Plaintiffs have failed to justify that amount, and there is no evidence to suggest that this appeal will involve as much printing or copying as was necessary in In re Initial Public Offering Securities Litigation. Therefore, the Court finds that $5,000 would be sufficient to cover any such taxable costs.

2. $50,000 in Attorney's Fees

The Second Circuit has held that appeal bonds may include attorney's fees where such fees are a recoverable cost under an applicable fee-shifting statute. See Adsani v. Miller, 139 F.3d 67 (2d Cir. 1998). Courts in this Circuit have held that when the underlying statute provides for asymmetrical fee-shifting – where only the losing defendant pays the attorney's fees of a winning plaintiff – the objectors' appeal bond may not include appellate attorney's fees of the parties seeking to preserve the settlement. See In re Currency Conversion Fee Antitrust Litig., MDL No. 1409, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) (concluding that "Section 4 of the Clayton Act is asymmetrical – i.e., attorney's fees are 'available only to plaintiffs who prove an antitrust injury' not just to a prevailing party," and therefore attorney's fees would not be available to plaintiffs on the appeal). However, where the underlying statute symmetrically requires the losing party to pay the attorney's fees of the winning party, then an appeal bond may include appellate attorney's fees of class counsel and defense counsel when a class settlement is appealed. See id.; In re Air Cargo Shipping Servs. Antitrust Litig., No. 06-md-1775, 2010 WL 1049269, at *2 (E.D.N.Y. Mar. 22, 2010) (holding that appeal bond could not include class counsels' attorney's fees because Clayton Act allows successful antitrust plaintiffs to recover fees, not the "prevailing party").

6

The objectors challenge the inclusion of attorney's fees in the appeal bond on the ground that under the applicable consumer fraud statutes, attorney's fees are not recoverable against objectors. Plaintiffs argue, and the Court agrees, that under the consumer protection statutes of states like New Jersey, Texas, Tennessee, and Ohio, fee-shifting is asymmetrical because they provide attorney's fees to both prevailing plaintiffs or consumers as well as to defendants upon a finding that the action is frivolous, groundless, or without legal or factual merit. See N.J. Stat. Ann. § 56:8-19; Tex. Bus. & Com. Code Ann. § 17.50(d); Tenn. Code Ann. § 47-18-109(e)(1), (2); Ohio Rev. Code § 1345.09(F). The Court therefore finds that attorney's fees in the amount of $50,000 is appropriately included in the appeal bond.

3. $57,500 in Delay Costs

Finally, plaintiffs submit that resolution of this appeal will take over a year, and that this delay will diminish the total value of the settlement due to the time value of money. Moreover, the claims administrator will need to incur additional time responding to class member inquiries into the status of the settled action. Specifically, plaintiffs include a declaration by the administrator stating that during the appeal process, it will spend between $21,250 and $42,500 in maintaining its call center and handling communications and emails with class members, and $15,000 in case management and website maintenance, resulting in an estimated $36,250 to $57,500 in additional costs due to the delay, depending on the volume of class member correspondence and website updates. Plaintiffs therefore request that $57,500 be included in the appeal bond.

Plaintiffs correctly argue that several cases outside this circuit have included delay costs in appeal bonds, but plaintiffs fail to address the fact that courts in this circuit are bound by the Second Circuit's requirement that the definition of "costs" for Appellate Rule 7 purposes come

from Rule 39, 28 U.S.C. § 1920, or the statute underlying the litigation.  See In re AOL Time Warner, Inc., Securities and "ERISA" Litigation, No. 02-CV-5575, 2007 WL 2741033, at *4, n. 4, (S.D.N.Y. Sept. 20, 2007) (concluding that under the Second Circuit's holding in Adsani, the requested appeal bond cannot include the estimated $883,925.00 in costs caused by the delay in administering the settlement because there is no relevant underlying statute that provides for the awarding on appeal of costs incident to delay, and such costs are not listed in Appellate Rule 39); see also In re Initial Public Offering Sec. Litig., 721 F. Supp. 2d, 210, 217-18 (S.D.N.Y. 2010) (concurring with those courts that have concluded that "damages for delay cannot be included in Rule 7 bonds where no underlying statute provides for the inclusion of such costs").

No statute underlying this litigation authorizes the inclusion of delay costs in an appeal bond.  The estimated $57,500 that plaintiffs submit they will incur as a result of the appeal shall not be included in the ordered bond.

## CONCLUSION

Plaintiffs' motion to require objectors' posting of an appeal bond in the amount of $132,500.00 [242] is granted in part and denied in part.  Objectors are ORDERED to post an appeal bond with the Clerk of the Court by September 17, 2013 in the amount of $55,000 to cover the taxable costs of appeal.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
September 3, 2013